(No. 42171.—

CERTAIN TAXPAYERS, Appellants, *vs.* RAYMOND J. SHEAHEN, County Collector, *et al.,* Appellees.

*Opinion filed March 24, 1970.*

BURKE WILLIAMSON, of Chicago, and EDWARD R. HOLMBERG, JR., of Waukegan, (ADAMS, WILLIAMSON & TURNEY, and HALL, MEYER, FISHER, VANDEUSEN, HOLMBERG & SNOOK, of counsel,) for appellants.

THOMAS H. COMPERE, City Attorney, of Lake Forest, and JAMES A. VELDE, of Chicago, (GARDNER, CARTON, DOUGLAS, CHILGREN & WAUD, of counsel,) for appellees.

Mr. JUSTICE BURT delivered the opinion of the court:

The county treasurer and collector of Lake County filed petition for judgment in the circuit court fixing the correct amount of taxes paid under protest for the year 1961. The taxpayers involved in this appeal had paid their taxes in full under protest and filed an objection in which they contended that the general corporate fund levy of the city of Lake Forest extended at the rate of .650 was excessive by the amount by which it exceeded .373 or .277. The objectors alleged that the statutory rate for the corporate fund as provided in the Municipal Code of 1961 (Ill. Rev. Stat. 1961, ch. 24, par. 8—3—7) is 1%, but that this rate must be further reduced because of the provisions of sections 162a and 162b of the Revenue Act to .373. (Ill. Rev. Stat. 1961, ch. 120, par. 643a, 643b.) At the hearing a stipulation incorporating

many exhibits and the testimony of witnesses were received in evidence. The court held that the tax rate for the city's corporate fund is not subject to a statutory rate limit as provided by general statutes or to the formula rates under the provisions of sections 162a and 162b of the Revenue Act. Accordingly an order was entered overruling the objection, from which the taxpayers appeal. Since the revenue is involved, this court has jurisdiction on direct appeal under Rule 302(a)(1). 43 Ill.2d Rule 302.

The city contends that since it is a municipality incorporated under a special act the rate at which it may levy and collect taxes for general purposes is governed by the provisions of the first paragraph of section 8—3—7 of the Municipal Code of 1961, which provides that such municipalities have the power to levy and collect at "(1) the rate specified in or allowed under its special act, or (2) a rate which will not exceed one per cent" of the assessed valuation of taxable property; that the rate "allowed under" Lake Forest's special act refers to its 1869 special charter which authorizes the levying of taxes to defray the municipal expenses without specifying any rate limit; that the rate "allowed under" the special act is whatever is necessary to defray the city's expenses and that the rate authorized by section 8—3—7 is therefore higher than one per cent and has no specific limit.

As to the alleged applicability of the provisions of the Revenue Act, it is Lake Forest's position that since section 162b provided in exemption clause (b) that it was inapplicable to limit the levies of taxing districts "which are not subject to limitation in the specific statutes applicable to them" (Ill. Rev. Stat. 1961, ch. 120, par. 643b), the express exemption applies to the city's corporate fund levy because it was not subject to limitation under section 8—3—7 of the Municipal Code or its special charter and therefore no limitation is imposed by formula under the Revenue Act.

The objecting taxpayers contend that the terms of the

special charter of 1869 limit the levy which the city was authorized to make for its corporate fund, in which connection they say that the rate limit specified in an earlier 1861 charter remained in effect notwithstanding a provision in the 1869 act repealing the earlier legislation. They also urge that by legislation enacted since 1869, including the so-called Butler Bills (Ill. Rev. Stat. 1947, ch. 120, pars. 643a and 643b), a statutory rate limit has been set for the general corporate fund of the city which supersedes any provisions of the special charter in that respect and makes the corporate levy subject to the rate formula provisions of the applicable sections of the Revenue Act. In the trial court objectors seriously contended that by levying for special purposes such as schools, garbage collection, library, pension funds, *etc.* under statutes other than the 1869 special act the city had elected to subject its levy for general purposes to the specific rate limits found in general statutes and waived any right to tax under the special charter provisions. Much of the voluminous record in this case was produced as a result of urging that argument. Objectors have failed to raise that question in this court and it is therefore waived. Rule 341(e)(7), 43 Ill.2d Rule 341(e)(7); *Berk* v. *Will County,* 34 Ill.2d 588, 594.

We shall first consider the provisions of the special charters. The first act incorporating the city of Lake Forest was passed in 1861. The pertinent language relative to the levy and collection of taxes is found in article 5 : "The city council shall have power and authority to levy and collect taxes upon all property, real and personal, within the limits of said city, except upon the parks and public grounds laid out within the bounds of said city, for educational purposes, including University, Academy and May Flower Parks, not exceeding one per cent, per annum upon the assessed value thereof; and may enforce the payment of the same in any manner to be provided by ordinance, not repugnant to the constitution of the United States or of this state." (Private

Laws of 1861, pps. 208-9.) In 1869 the legislature passed an act entitled "An Act to amend an act entitled 'An Act to incorporate the city of Lake Forest', approved Feb. 21, 1861." (Private laws of 1869, vol. 2, p. 14 *et seq.*) Article VII of the act, entitled "Of Taxation", provides that "The city council shall have power, within the city, by ordinance— *First*.—To levy and collect, annually, taxes on the assessed value of all real and personal estate and property within the city, and all personal property of the inhabitants thereof made taxable by the laws of the state for state purposes, to defray the general, special and contingent expenses of the city and all other appropriations not otherwise provided for." Section 3 of article IX dealing with collection of taxes and assessments provides: "When the assessment lists have been corrected and revised the same shall be filed, and an order confirming the same, and directing the warrant to be issued for the collection thereof, shall be entered by the clerk. The city council shall thereupon, by an ordinance or resolution, levy such sum or sums of money as may be sufficient for the several purposes for which taxes are herein authorized to be levied, not exceeding the authorized percentage." Section 27 of article XI of the act of 1869 provides: "The present act of incorporation of said city, approved Feb. 21, 1861, shall be, and the same is hereby repealed."

It should be observed at the outset that the power to tax found in article VII of the 1869 special act is comprehensive and extensive, being limited only by such amount as may be necessary to defray the city's expenses. It imposes no specific rate limit on the power nor is such a limit to be found anywhere else in the statute. This court has held that, absent such a limiting provision, the grant of power to tax in a special charter will not be circumscribed by imposing a limit where none exists. (*People ex rel. Town of Cicero* v. *Knopf,* 186 Ill. 457; *Town of Cicero* v. *McCarthy,* 172 Ill. 279.) In *McCarthy* the town had made a levy of three per cent in

1896. An 1877 statute provided that special charter towns must levy taxes "in the manner" provided by article 8 of the Cities and Villages Act. (Laws of 1877, p. 61.) By an 1879 amendment article 8 imposed a two-per-cent limit on the rate for corporate purposes. (Laws of 1879, p. 66.) This court decided that the 1877 act related only to the manner of collecting taxes and not the rate. After noting that the special charter of Cicero contained no limitation in itself as to the amount of taxes which might be levied and collected, it was held that the 1879 amendment could not be construed to incorporate in the special charter a limitation where none existed before. (*Town of Cicero* v. *McCarthy*, 172 Ill. 279, 281.) The situation in the *Knopf* case involved an 1897 amendment to the 1877 statute which provided that all municipalities in the State, whether organized under general law or special charter "shall assess and collect their taxes in the manner, and have power to assess and collect them at the rate provided for in article 8 of the act entitled 'An Act to provide for the incorporation of cities and villages,' approved April 10, 1872, and in the manner provided for in the general revenue law of this State; and all acts or parts of acts inconsistent with the provisions of this act are hereby repealed." (Laws of 1897, p. 93.) This court held that although the rate provided in article 8 was two per cent, the act in question did not say that special charter municipalities had the power to assess only at that rate; that while it operated to allow special charter municipalities with rates below two per cent to increase their rates to that amount, it did not affect the tax rate of a municipality such as Cicero which had no rate limit in its charter. We conclude therefore that if any limitation of rate is to be ascribed to Lake Forest's special charter it must exist in spite of the complete lack of a specific rate limitation, and that under the above authorities this court should not impose a limit unless the legislature clearly intended to prescribe it.

The objectors argue that the original one-per-cent limi-

tation found in the 1861 charter is still in effect. The difficulty with this position is that the 1869 act specifically repealed the 1861 act in its entirety. Ordinarily the effect of repeal is to obliterate the statute repealed as completely as though it had never been passed as a law and never existed. (*Vance* v. *Rankin*, 194 Ill. 625, 627-28.) Objectors cite *Merlo* v. *Johnston City and Big Muddy Coal and Mining Co.*, 258 Ill. 328, and *Shinners* v. *Royal Coal and Mining Co.*, 188 Ill. App. 335, in an effort to demonstrate an intention on the part of the legislature to retain the rate limitation in spite of repeal. The cited cases merely hold that where an act which is completely amendatory of a former act expressly retains and re-enacts certain provisions of the earlier statute though repealing it, the effect is to give continuous vitality to the provisions expressly retained in the new act. These decisions do not support objectors' position because the 1869 charter act wholly fails to re-enact the one-per-cent limitation found in the 1861 statute.

Faced with the impossibility of demonstrating a specific tax-rate limitation placed upon the power to tax granted in Lake Forest's 1869 charter, objectors suggest that the words "not exceeding the authorized percentage" found in section 3 of article IX refer to and are intended to incorporate the one-per-cent limitation found in connection with the grant of power to tax in the 1861 act. Alternatively they suggest that if these words cannot be given the effect of re-establishing or continuing the definite one-per-cent limitation they must be held to refer to and incorporate future statutory provisions which might be enacted from time to time placing a limitation on the corporate rate. Neither of these constructions is tenable. In the first place the words in question are not used in connection with the grant of power to tax found in article VII. They appear, rather, in article IX which deals with tax-collection procedure primarily. In the 1861 charter the percentage limitation is stated in direct connection with the grant of power to tax. Had the legis-

lature intended to impose the same tax rate limit in 1869 it would be expected that it would again have stated the limit as a direct modification of the power. Moreover, having stated the limitation in terms of a definite percentage in 1861, it would not be expected that if the same intention were entertained in 1869 the legislature would use the language "not exceeding the authorized percentage", which is vague at best, especially where the words have no point of reference in the act itself. The provisions of the 1861 act demonstrate that the legislature knew how to state a definite tax rate limit unequivocally where one was intended. The failure to include such a limit with equal clarity in the 1869 act demonstrates quite conclusively that no such limitation was intended.

As to the alternative suggestion, we think it highly unlikely that having given a broad taxing power without a specified rate limitation the legislature would then provide that the tax levy should not exceed percentage limits which future legislatures might impose. Such a construction would be contrary to the principle that the adoption by reference of another statutory provision does not include subsequent additions or modifications of the statute so adopted, unless it does so by express or strongly implied intent. (*Town of Cicero* v. *McCarthy,* 172 Ill. 279, 283; *People ex rel. Knecht* v. *Chicago and Eastern Illinois R.R. Co.,* 300 Ill. 218, 222.) Furthermore the words "not exceeding the authorized percentage" follow immediately and directly refer to the words "sufficient for the several purposes for which taxes are herein authorized to be levied". Since it is apparent that the words "herein authorized" refer to what is authorized in the charter it seems unreasonable to believe that the phrase immediately following which refers to "authorized percentage" was intended by the legislature to refer to something authorized outside the special charter. Since the words "authorized percentage", though so intended, cannot apply to anything within the act in the absence of an expressed author-

ized percentage, the lack of harmony between the phrase in question and the rest of the statute should be resolved by rejecting it. Where there is want of harmony between the whole act and the language of some particular clause, sentence or phrase, such inconsistent words may be modified, changed or rejected in order to arrive at a construction conforming to the legislative aim or intent. *People ex rel. Community High School Dist.* v. *Hupe*, 2 Ill.2d 434, 448; *Baker & Conrad, Inc.* v. *Chicago Heights Construction Co.*, 364 Ill. 386, 393; *Burns* v. *Industrial Com.*, 356 Ill. 602, 606; *People ex rel. Bussey* v. *Gaulter*, 149 Ill. 39, 47-49.) With the incompatible phrase eliminated, the act appears to be harmonious in all its parts and provisions and conformable to the obvious legislative intent.

Objectors have also argued that the power to tax granted in the special act of 1869 includes only taxes that are not provided for in other statutes; that the taxing power is therefore restricted whenever another statute imposes a rate limit for general purposes; that the decisions in the cases involving the town of Cicero discussed above do not apply to Lake Forest and the 1897 statute authorizing special charter cities to assess a two-per-cent rate imposed a two-per-cent limit on Lake Forest's statutory power. This position is based entirely upon the alleged construction to be given the words "not otherwise provided for" as found in article VII of the 1869 special act which has been set forth in full earlier in this opinion. Objectors urged that the words in question operate to modify the word "expenses" in the preceding phrase as well as the word "appropriations" which they immediately follow. This construction appears strained and unreasonable. It seems to us that the word "other" before "appropriations" refers to appropriations other than those for the "general, special and contingent expenses of the city" and that the words "not otherwise provided for" modify only the word "appropriations" which they immediately follow. It should be noted that the result of the con-

struction contended for by objectors would be to leave the city with power to tax for its general fund only if other statutes failed to grant the power. We agree with counsel for Lake Forest when they say that it would be unthinkable that the 1869 legislature, in a comprehensive special act reincorporating the city, would omit such a vital provision as a primary power to levy taxes to defray the city's expenses. To hold with such a limitation on the tax power would be clearly inconsistent with the grant of broad powers over finances found elsewhere in the act. The primary rule in the interpretation and construction of statutes is that the intention of the legislature should be ascertained and given effect. (*People* v. *Price,* 257 Ill. 587, 593.) The legislative intent should be sought primarily from the language used in the statute. Where the language of the act is certain and unambiguous the only legitimate function of the courts is to enforce the law as enacted by the legislature. (*Weiss Memorial Hospital* v. *Kroncke,* 12 Ill.2d 98, 105; *Belfield* v. *Coop,* 8 Ill.2d 293, 307.) It is never proper for a court to depart from plain language by reading into a statute exceptions, limitations or conditions which conflict with the clearly expressed legislative intent. (*People* v. *Boreman,* 401 Ill. 566, 572; *Wall* v. *Pfanschmidt,* 265 Ill. 180, 190-91.) To give the words "not otherwise provided for" the meaning urged by objectors would be violative of the above principles of statutory construction.

Objectors have argued extensively that various statutes relating to taxation passed by the legislature since 1869 have operated to repeal the power of Lake Forest to tax for its general fund at an unlimited rate, if indeed such power ever existed, and have imposed on Lake Forest the rate limitations specified from time to time in general laws. We have examined these contentions with great care and have read carefully all of the statutes alleged to have had an effect on Lake Forest's power to tax under its special charter. Our conclusion is that none of these statutes have

manifested an intention on the part of the legislature to circumscribe or limit the power to tax for the general fund as granted by the special act in 1869. We believe that no useful purpose would be served by discussing each of these laws in detail. Suffice it to say that most of them have now been repealed and that the applicable provisions of the Municipal Code and Revenue Act hereafter discussed indicate clearly that it had never been the intention of the legislature to do anything but preserve the power to tax under special acts as granted to various municipalities. Objectors have cited *People ex rel. Bell* v. *New York Central R.R. Co.,* 10 Ill.2d 612, in support of their contention that Lake Forest's special charter rate was repealed by various general statutes and that the unlimited charter rate, once repealed, could not constitutionally be revived. Our conclusion announced above, that none of the statutes urged by objectors had manifested an intention to repeal the taxing provisions of the special charter, is not affected by anything in the *Bell* case which held that the school district in question had elected to come under the school statutes and revenue laws and could not later repudiate the general laws and return to the provisions of its 1869 special act. The further point that a special charter rate, once repealed, could not constitutionally be revived has no application here since neither the city nor the legislature has attempted to revive a tax power that was repealed or waived.

Section 8—3—7 of the Illinois Municipal Code (Ill. Rev. Stat. 1961, ch. 24, par. 8—3—7) contains the following provision concerning tax rates of municipalities organized under special acts: "8—3—7. Every municipality incorporated under a special act has the power to levy and collect annually its taxes for general purposes * * * at whichever of the following rates is higher: (1) the rate specified in or allowed under its special act, or (2) a rate which will not exceed one per cent of the aggregate valuation of all property within the municipality, subject to tax-

ation therein". This is the statute under which Lake Forest made the tax levy in question in 1961. The city takes the position that the statute gives it the right to levy at the rate "allowed under" its special act which refers to its 1869 charter and is without specific limit. This construction seems to us to be clearly correct and we cannot agree with objectors' position that the one-per-cent limit of clause (2) controls or, if clause (1) applies, that it refers to a rate specified in or allowed under some statute other than the 1869 special act. The statute refers to municipalities organized under special acts and rates specified in or allowed under those acts and nothing else. By using the words "specified in or allowed under" the legislature has made it abundantly clear that its intention encompasses such municipalities as Lake Forest, which has no specific rate limit.

The city contends that provisions of the Revenue Act known as the Butler Bills, being section 162a as enacted in 1947 and 162b in 1951 and later years, exempted Lake Forest's tax levy for general purposes so that the rate formula provisions of those laws which objectors would apply to Lake Forest's corporate levy cannot properly be used. The fourth paragraph of section 162a as enacted in 1947 provides: "The foregoing provisions of this section shall in no way be construed to affect tax rates in the following categories: (a) those of taxing districts created after December 31, 1945, (b) those for levies established by popular vote after December 31, 1945, (c) those subject to limits established by referenda held after December 31, 1945, and (d) those which are not subject to limitation in the specific statutes applicable to them." (Ill. Rev. Stat. 1947, ch. 120, par. 643a). This exemption of a tax rate that has no specific limit was continued in section 162a through amendments of the section made in 1949 and 1951 until subsection (1) containing both the formula and the exemptions was repealed by its omission from the section in 1955. (Laws of 1955, p. 1579.) But the repealed para-

graphs of the 1947 version of section 162a are relevant here because the 1961 text of section 162b expressly refers to the 1947 version. Section 162b, first enacted in 1951, has been later amended but the text of the second paragraph of the section has remained the same. It provides in part as follows: "The provisions of this Section shall be inapplicable to limit the extension of levies in the following categories: (a) those of taxing districts having a population of more than 500,000 inhabitants; (b) those which are not subject to limitation in the specific statutes applicable to them; and (c) those of any school district of less than 500,000 population which is subject to the provisions of Article 17 of the School Code." (Ill. Rev. Stat. 1961, ch. 120, par. 643b.) It appears therefore that the exception clauses in section 162a (as worded in 1947 when the formula applies) and in section 162b have always stated in identical language that the sections do not limit tax rates "which are not subject to limitation in the specific statutes applicable to them". The trial court held that the exception covered the general fund of the city of Lake Forest and we believe that conclusion is clearly correct. Such a construction of the exemption provisions of the Revenue Act places it in harmony with the similar provisions of the Municipal Code.

The conclusion is that the judgment of the circuit court overruling the objections to Lake Forest's general corporate fund levy is fully supported by the evidence and the law applicable to the case, and it is affirmed.

*Judgment affirmed.*