(No. 51356

JOHN DIENES *et al.,* Appellees, v. KENNETH W. HOL-LAND, Director of Labor, Appellant.

*Opinion filed December 3, 1979.*

William J. Scott, Attorney General, of Springfield (Myra Turner, Assistant Attorney General, of Chicago, of counsel), for appellant.

Harold A. Katz, Irving M. Friedman, Jerome Schur, and Stanley Eisenstein, of Chicago (Katz, Friedman, Schur & Eagle, of Chicago, of counsel), for appellees.

Nelson I. Dunitz, of Chicago (John A. Fillion, General Counsel, and Jordan Rossen, Associate General Counsel, of Detroit, Michigan, of counsel), for *amicus curiae* International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW.

MR. JUSTICE WARD delivered the opinion of the court:

This appeal is from a judgment of the appellate court reversing a decision of the circuit court of Cook County which upheld a finding by Kenneth W. Holland, Director of Labor. (64 Ill. App. 3d 109.) The Director had denied claims for unemployment compensation filed by John Dienes, Alfred Cavozos and Reuben Rodriguez (Ill. Rev. Stat. 1971, ch. 48, par. 434). We granted the Director's petition for leave to appeal.

The claimants were employed by the Continental Grain Company (Continental), which operated a grain elevator in the Chicago area. On September 1, 1971, they, as members of Local 418, Flour and Feedmill Workers, were engaged in a lawful strike against Continental and other operators of grain elevators in Cook County. The strike was interrupted in October of 1971 by a Federal court order requiring a return to work but was renewed when the order was withdrawn. Continental and Local 418 reached an agreement on February 19, 1972, ending the strike.

In November of 1971, while they were on strike, the claimants obtained employment with the Carey Grain Corporation (Carey), another grain elevator operator, which had already reached a bargaining agreement with the union. They worked on a full-time basis for Carey until they were laid off due to a lack of work. Cavozos was laid off on December 25, 1971, and Dienes and Rodriquez on January 8, 1972. Though the testimony of Rodriquez is somewhat ambiguous, it appears that each thought he had obtained a permanent position with Carey. The claimants resumed their employment at Continental in February of 1972 after the bargaining agreement had been reached.

The claimants applied for unemployment benefits to cover the period between their layoff at Carey and their return to work. After a hearing, the Director of Labor held

that they were disqualified from receiving benefits because of section 604 of the Unemployment Compensation Act. That section provides:

> "An individual shall be ineligible for benefits for any week with respect to which it is found that his total or partial unemployment is due to stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he *is or was last employed* \*\*\*." (Emphasis added.) Ill. Rev. Stat. 1971, ch. 48, par. 434.

Relying primarily on the holding in *Mark Hopkins, Inc. v. California Employment Com.* (1944), 24 Cal. 2d 744, 151 P.2d 229, the Director concluded that since the "claimants never notified the employer of their intention to quit and returned to it at the end of the strike \*\*\* we must infer that their employment with Carey was not entered into with the intent that it be permanent \*\*\*."

Our Unemployment Compensation Act was enacted in 1937. (Ill. Rev. Stat. 1937, ch. 48, par. 217 *et seq.*) The public policy announced in section 1 of the Act was to lessen the severe economic insecurity due to involuntary unemployment, which was described as a "menace to the health, safety, morals and welfare of the people of the State of Illinois." (Ill. Rev. Stat. 1937, ch. 48, par. 217.) The courts have given a liberal construction to the Act. *Ross v. Cummins* (1956), 7 Ill. 2d 595; *Commonwealth Life & Accident Insurance Co. v. Board of Review* (1953), 414 Ill. 475; *Central Foundry Division of General Motors Corp. v. Holland* (1976), 36 Ill. App. 3d 998.

The Director states that section 604, the labor dispute provision of the Act under which the claimants were declared ineligible, was designed to maintain neutrality in the collective bargaining process so as not to provide the employer or labor with any economic advantage. (See *Buchholz v. Cummins* (1955), 6 Ill. 2d 382.) The Director argues that in viewing the circumstances the claimant

should be considered "last employed" at Continental and not at Carey. He points out that their unemployment resulted from a labor dispute with Continental and that, while they did work at Carey for a short period, that relationship was at best a temporary or a stop-gap measure. This, it is argued, is shown by the claimants' return to their jobs at Continental upon settlement of the labor dispute, by their enjoyment of benefits secured in the settlement, and further by their maintaining seniority status at Continental. Evidencing that the employer-employee relationship still existed between Continental and the claimants, the Director says that at no time did they attempt to sever their relationship before going to work with Carey. Since the relationship was not broken by their employment with Carey they should be considered, the Director argues, "last employed" by Continental and thus within the disqualifying labor dispute provision of the Act. Another contention of the Director is that "last employed" should be interpreted as last "regularly or permanently" employed.

Labor dispute provisions affecting eligibility are found in the unemployment benefit statutes of a majority of the States. The statutory provision involved in *Mark Hopkins, Inc. v. California Employment Com.* (1944), 24 Cal. 744, 151 P.2d 229, on which the Director relied in concluding the claimants here were disqualified, was quite different from the provision of our statute. We consider the Director's reliance on the California holding was erroneous. The statute involved there provided:

> "An individual is not eligible for benefits for unemployment, and no such benefit shall be payable to him *** (a) If he left his work because of a trade dispute and for the period during which he continues out of work by reason of the fact that the trade dispute is still in active progress in the establishment in which he was employed." Deering's Gen. Laws, Act 8780d, sec. 56(a) (Supp. 1939) (now Cal. Unemp. Ins. Code sec. 1262 (1971)).

The term "last employed" is found in the labor dispute provisions of a number of unemployment benefit statutes, including, of course, our statute. "Last employed" has been variously interpreted. It has been held that the term imposes an affirmative duty upon a claimant to show a complete severance of the employment relationship in order to avoid disqualification. (*In re Hatch* (1972), 130 Vt. 248, 290 A.2d 180; *Scott v. Smith* (1962), 141 Mont. 230, 376 P.2d 733.) In other holdings courts have said that the determining standard is whether the striking employee was intending in good faith to obtain permanent employment when he took the later job (*Labinsky v. Florida Industrial Com.* (Fla. App. 1964), 167 S.2d 620; *Bruley v. Florida Industrial Com.* (Fla. App. 1958), 101 S.2d 22; *Gentile v. Director of Division of Employment Security* (1952), 329 Mass. 500, 109 N.E.2d 140) with no intent to return to the first employer when the strike ended (*In re Hatch* (1972), 130 Vt. 248, 290 A.2d 180; *Bergen Point Iron Works v. Board of Review* (1948), 137 N.J.L. 685, 61 A.2d 267). Courts in two jurisdictions have judged that "last employed" is to be read as last "regularly or permanently" employed. *E. I. DuPont de Nemours & Co. v. Dale* (Del. 1970), 271 A.2d 35; *Alin v. Alaska Employment Security Com.* (1958), 17 Alaska 607.

Our appellate court here, in reversing the trial court, considered the term "last employed" in our statute to mean "last in time." This was also the meaning given the term in *Great Lakes Steel Corp. v. Employment Security Com.* (1967), 6 Mich. App. 656, 150 N.W.2d 547. There, 75 striking employees of Great Lakes obtained interim jobs among a number of different employers. They were later laid off but, when the strike was concluded, returned to their employment at Great Lakes. The appellate court reversed the trial court's decision that the claimants were disqualified under the labor dispute provision and held that the claimants' unemployment for which they had

filed claims for compensation did not result from the labor dispute at Great Lakes but from the layoffs at their later employments. The court said that while an employer-employee relationship might continue to exist between Great Lakes and the claimants, "the interim employer became the 'establishment in which he is or was last employed,' when employment with such employer had been obtained." 6 Mich. App. 656, 665, 150 N.W.2d 547, 551. The Supreme Court of Michigan affirmed. *Great Lakes Steel Corp. v. Employment Security Com.* (1968), 381 Mich. 249, 161 N.W.2d 14.

We consider that the appellate court was correct in reading the statute just as it was enacted, that is, in saying that section 604 disqualifies an employee who becomes unemployed as a result of a labor dispute only at the "factory, establishment, or other premises at which he is or was last employed ***." (Ill. Rev. Stat. 1971, ch. 48, par. 434.) We cannot perceive any legislative intendment to add any additional conditions to the statute in order to qualify a claimant for benefits.

The record shows that the claimants, who refused to cross picket lines at grain elevators in Cook County, applied for and obtained full-time employment with Carey, which had already reached a labor agreement with the union. Although it seems that only Reuben Rodriguez was employed in the same position he filled at Continental, the claimants, according to their testimony, believed that their new employment was permanent and that they would have continued to work at Carey had they not been laid off because of a lack of work.

It is not disputed that Carey was to be considered an "employer" under the Act (Ill. Rev. Stat. 1971, ch. 48, par. 315), and that the services performed by the claimants qualified as "employment" (Ill. Rev. Stat. 1971, ch. 48, par. 316), with an "employing unit" (Ill. Rev. Stat. 1971, ch. 48, par. 314). Our statute does not, as do statutes in

some States, set a required length of employment with an interim employer in order to avoid disqualification under section 604. See, *e.g., Huck v. Industrial Com.* (Mo. App. 1962), 361 S.W.2d 332 (citing Mo. Rev. Stat. 1959, sec. 288.040, which requires that subsequent employment during the existence of a labor dispute must be *bona fide*, permanent and last for a major part of two weeks in order to maintain eligibility).

This court has held that the language of a statute is to be given its plain and ordinary meaning (*Christian Action Ministry v. Department of Local Government Affairs* (1978), 74 Ill. 2d 51, 57, citing *People v. Moore* (1978), 69 Ill. 2d 520, 523), and where the intendment of the statute is clear from the language itself a court will not resort to judicial construction by " 'reading into a statute exceptions, limitations or conditions which conflict with clearly expressed legislative intent.' " *Harvey Fireman's Association v. City of Harvey* (1979), 75 Ill. 2d 358, 363, quoting *Certain Taxpayers v. Sheahen* (1970), 45 Ill. 2d 75, 84.

To interpret "last employed" as the Director would have us do would impose an affirmative duty on a claimant to sever his employment relationship with his employer before taking other employment so as to avoid disqualification under section 604. This would require a claimant to establish something in addition to what the statute requires in order to qualify for benefits. It would also contradict the principle that where the statutory language is clear judicial construction of it is unnecessary. Following the interpretation urged by the Director, a striking employee, before accepting other employment, would have to attempt to determine whether his old job held better economic and other prospects than a new job. If he severed the relationship with his employer while still on strike and obtained new employment but was later laid off, he might indeed qualify for unemployment compen-

sation, but he would be precluded from returning to his former employment. If, however, he did not end the relationship and was then laid off by a later employer, not only would he be unemployed but he would also be ineligible for unemployment benefits, since he would be considered "last employed" by the employer where the strike still existed. The striking employee might well conclude that this dilemma could be avoided only by applying for public welfare.

The last argument of the Director, like one considered and rejected in *Great Lake Steel Corp. v. Employment Security Com.* (1968), 381 Mich. 249, 161 N.W.2d 14, is that if "last employed" is given the interpretation the appellate court gave it, a State policy of maintaining neutrality in employer-employee relations which has been recognized in decisions of this court will be violated. The Director contends that if the claimants are held qualified to receive unemployment benefits it, in effect, will be providing them with financial resources which could prolong the strike and thus disrupt the employer-employee balance in the collective bargaining process. The wish to maintain the neutrality, the Director says, was the very reason for the presence of section 604 in the Unemployment Compensation Act.

We do not find this contention persuasive. The cases cited in support of the position are distinguishable. In *Buchholz v. Cummins* (1955), 6 Ill. 2d 382, *Fash v. Gordon* (1947), 398 Ill. 210, and *Local Union No. 11 v. Gordon* (1947), 396 Ill. 293, the issue was whether the claimant's unemployment resulted from an event or occurrence other than a labor dispute or work stoppage. Indisputably a labor dispute existed here. Too, in none of the cases did the claimants obtain or even seek interim employment before filing claims for unemployment benefits.

It cannot be said that a neutrality policy has any direct applicability here. The unemployment for which the claimants are seeking benefits did not result from the labor dispute at Continental but from their having been laid off by Carey. They therefore were within the class of employees which the Act was designed to assist. That they may earlier have gone on strike at another place of employment would not seem to have a necessary bearing on eligibility under the Act if they later were employed elsewhere.

It is appropriate to observe, however, that we are, of course, affirming the appellate court's judgment on the circumstances involved. We need not consider here whether every succeeding or "last" employment, whatever the circumstances, will qualify a claimant for unemployment benefits.

For the reasons given, the appellate court is affirmed.

*Judgment affirmed.*