(No. 82375.—

## BRIDGESTONE/FIRESTONE, INC., Appellee, v. CECIL ALDRIDGE *et al.*, Appellants.

*Opinion filed October 23, 1997.*

HEIPLE, J., joined by MILLER and NICKELS, JJ., dissenting.

John M. West and Paul M. Zimmerman, of Bredhoff & Kaiser, P.L.L.C., of Washington, D.C., and William LaMarca, of Sgro & LaMarca, of Springfield, for appellants.

James E. Ryan, Attorney General, of Springfield (Barbara A. Preiner, Solicitor General, and John P. Schmidt, Assistant Attorney General, of Chicago, of counsel), for appellants Illinois Department of Employment Security *et al.*

Lee Ann Russo, Mark P. Rotatori and Jason G. Winchester, of Chicago, and Patrick F. McCartan, of Cleveland, Ohio, all of Jones, Day, Reavis & Pogue, for appellee.

Michael A. Warner, Edward B. Miller and Cynthia C. Mooney, of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, and Mark S. Killion, of Stratton, Stone & Kopec, of Springfield, for *amicus curiae* Illinois Manufacturers' Association.

CHIEF JUSTICE FREEMAN delivered the opinion of the court:

Section 604 of the Illinois Unemployment Insurance

Act disqualifies an employee from receiving unemployment benefits where the employee is voluntarily unemployed because of a labor strike at the place where he or she was "last employed." 820 ILCS 405/604 (West 1994). In *Dienes v. Holland*, 78 Ill. 2d 8 (1979), this court interpreted the phrase "last employed" to mean simply last in time.

This appeal requires us to ascertain whether the legislature intended to add conditions to section 604 of the Act by amending other sections of the Act subsequent to *Dienes*. We cannot discern such an intent from the Act as it is written.

## BACKGROUND

The record contains the following undisputed pertinent facts. The 243 claimants in this case were all employed by Bridgestone/Firestone, Inc. (Bridgestone), at Bridgestone's Decatur plant. On July 12, 1994, claimants went on strike. Bridgestone has not permanently replaced or fired claimants, who remain employees of Bridgestone and who intend to return to work at Bridgestone at the end of the strike. Since claimants' unemployment was due to a labor strike at the place where they were last employed, *i.e.*, Bridgestone, they were ineligible for unemployment benefits. See 820 ILCS 405/ 604 (West 1994).

Each claimant obtained interim employment, from which he or she was fired or laid off. The interim employment constituted "employment" and the interim employers constituted "employers" as defined by the Act. 820 ILCS 405/205, 206 (West 1994). In many cases, the interim employment lasted for as little as a few months or even a few days.

Each claimant applied to the Illinois Department of Employment Security for unemployment benefits. The claims adjudicator, who determines applications for benefits, awarded unemployment benefits to claimants.

Relying on *Dienes v. Holland*, 78 Ill. 2d 8 (1979), the adjudicator determined that claimants' acquisition of interim employment outside of Bridgestone removed the disqualification of section 604 of the Act.

Bridgestone appealed each of these determinations to the Director of the Department, who consolidated them for review. The Director upheld the award of unemployment benefits. The Director agreed with the claims adjudicator that claimants' interim employment removed the section 604 disqualification. Relying on *Dienes*, the Director rejected as irrelevant the issues of whether: (1) claimants had taken the interim employment in good faith, instead of to avoid the section 604 disqualification; and (2) the interim employment was meant to be permanent.

Bridgestone filed a complaint in the circuit court of Macon County seeking administrative review of the Department's award of unemployment benefits to claimants. The circuit court set aside the Department's decision. Citing *Dienes*, the court held that a striking employee's good faith in obtaining interim employment was a condition to removing the section 604 disqualification. The court also held that good faith "does not necessarily require a belief that the interim employment will be permanent." The circuit court remanded the cause to the Department to determine whether each "claimant performed interim employment in good faith and the claimant is otherwise free of Section 604 disqualification."

The Department petitioned the appellate court for leave to appeal. See 155 Ill. 2d R. 306(a). The appellate court affirmed the circuit court. 284 Ill. App. 3d 360. However, the appellate court did not base its reasoning on *Dienes*, but rather on section 1502.1 of the Act, which the legislature enacted subsequent to *Dienes*. Section 1502.1 provides detailed guidelines for determining an

employer's benefit charges. 820 ILCS 405/1502.1 (West 1994). The appellate court held that the definition of "last employer" in section 1502.1 of the Act applies to the term "last employed" in section 604. Thus, according to the appellate court, a striking employee's interim employment does not remove the section 604 disqualification unless the employment meets the conditions of section 1502.1. 284 Ill. App. 3d at 364-65. The appellate court remanded the cause to the Department to make this determination for each claimant.

The claimants petitioned this court for leave to appeal. 155 Ill. 2d R. 315(a). We allowed the petition and now reverse the appellate court.

## DISCUSSION

### Standing

We address at the outset Bridgestone's contention that claimants lack standing to appeal to this court. The doctrine of standing requires that a party have a real interest in the action brought and its outcome. The purpose of the doctrine is to insure that courts decide real controversies and not abstract questions or moot issues. Standing is not a procedural technicality, but rather is an aspect or component of justiciability. *In re Estate of Wellman*, 174 Ill. 2d 335, 344 (1996).

Bridgestone contends that claimants cannot appeal from the appellate court's decision. Bridgestone observes that the Department, alone, appealed from the circuit court to the appellate court. Bridgestone argues that a party in a circuit court proceeding who does not file a notice of appeal in the appellate court is no longer a party in that proceeding and, therefore, cannot petition this court for leave to appeal pursuant to our Rule 315(a). 155 Ill. 2d R. 315(a). Accordingly, Bridgestone contends that we should dismiss this appeal.

This contention lacks merit. Bridgestone does not

deny, nor, we surmise, could it deny, that claimants were proper parties in the circuit court. See *Cuny v. Annunzio*, 411 Ill. 613, 617 (1952); 735 ILCS 5/3—107(a) (West 1994). Further, it is quite settled that an appeal is not a new proceeding, but rather is a continuation of the proceedings in the court from which the appeal is taken. 155 Ill. 2d R. 301; *Swain v. Hoberg*, 380 Ill. 442, 446 (1942); *Taylor v. Taylor*, 45 Ill. App. 3d 352, 356 (1977). Since the claimants were proper parties of record in the circuit court, they remained proper parties in the appellate court, even though they did not join in the appeal. See *Wm. Aupperle & Sons, Inc. v. American National Bank & Trust Co.*, 62 Ill. App. 3d 842, 846 (1978), citing *Carpenter v. Young*, 280 Ill. App. 116, 118 (1935). We hold that claimants have standing to appeal to this court.

## The Merits

We note our standard of review. The Act provides that judicial review of unemployment benefit decisions be in accordance with the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 1994); 820 ILCS 405/1100 (West 1994)). The Administrative Review Law provides that our review extends to all questions of law and fact presented by the entire record. 735 ILCS 5/3—110 (West 1994). The rule that an administrative agency's findings of fact should not be disturbed unless they are against the manifest weight of the evidence does not apply where the question involved is one of law, such as the proper interpretation of a statute. In such a case, the Board's finding is not binding on the court. *DiFoggio v. Retirement Board of the County Employees Annuity & Benefit Fund*, 156 Ill. 2d 377, 380-81 (1993).

## "Last Employed"

Section 604 of the Act states in pertinent part:

"Labor Dispute. An individual shall be ineligible for benefits for any week with respect to which it is found that his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed." 820 ILCS 405/604 (West 1994).

The controlling principles are familiar:

" 'It is a primary rule in the interpretation and construction of statutes that the intention of the legislature should be ascertained and given effect. [Citations.] This is to be done primarily from a consideration of the legislative language itself, which affords the best means of its exposition, and if the legislative intent can be ascertained therefrom it must prevail and will be given effect without resorting to other aids for construction. [Citations.] There is no rule of construction which authorizes a court to declare that the legislature did not mean what the plain language of the statute imports.' (*Western National Bank v. Village of Kildeer* (1960), 19 Ill. 2d 342, 350.)" *Illinois Power Co. v. Mahin*, 72 Ill. 2d 189, 194 (1978).

Further:

" 'Where the language of the act is certain and unambiguous the only legitimate function of the courts is to enforce the law as enacted by the legislature. [Citations.] It is never proper for a court to depart from plain language by reading into a statute exceptions, limitations or conditions which conflict with the clearly expressed legislative intent. [Citations.]' *Certain Taxpayers v. Sheahen* (1970), 45 Ill. 2d 75, 84." *Harvey Firemen's Ass'n v. City of Harvey*, 75 Ill. 2d 358, 363 (1979).

In *Dienes*, the appellate court concluded that the section 604 disqualification refers simply and only to the establishment where a claimant was last employed. Thus, the disqualification is removed when a claimant acquires subsequent employment. Section 604 did not require such a claimant to show that the interim employment was *bona fide* or permanent. *Dienes v. Holland*, 64 Ill. App. 3d 109, 113-14 (1978).

This court affirmed, holding that "the appellate court was correct in reading the statute just as it was

enacted." *Dienes*, 78 Ill. 2d at 14. This court could not perceive any legislative intent to add any additional conditions to section 604 to qualify a claimant for benefits. Thus, this court refused to read into the section 604 disqualification the additional conditions that the interim employment be *bona fide* or permanent. *Dienes*, 78 Ill. 2d at 14-15. This court lastly noted that its decision was based on the facts of that case. This court expressly stated: "We need not consider here whether every succeeding or 'last' employment, whatever the circumstances, will qualify a claimant for unemployment benefits." *Dienes*, 78 Ill. 2d at 17.

In the present case, the Department and the circuit court, both relying on *Dienes*, found two different interpretations of section 604 of the Act. The Department relied on *Dienes* in awarding unemployment benefits to claimants, whether or not the interim employment was *bona fide* or meant to be permanent. The circuit court pointed to the *caveat* at the end of *Dienes* in concluding that a striking employee's good faith in obtaining interim employment was a condition to removing the section 604 disqualification, which required a case-by-case determination.

Examining the entire act (see *Castaneda v. Illinois Human Rights Comm'n*, 132 Ill. 2d 304, 318 (1989)), the appellate court found a third interpretation of section 604. The appellate court relied on section 1502.1 of the Act, which the legislature enacted subsequently to *Dienes*. That section sets out detailed rules governing whether benefits to a claimant will in turn be charged to the claimant's former employer. The initial subsections of section 1502.1 determine the particular employer that will be charged, which in most cases is the employer for which the claimant most recently worked for a minimum of 30 days. 820 ILCS 405/1502.1 (West 1994). One year after adding section 1502.1 to the Act,

the legislature added subsection (E). Pursuant to section 1502.1(E), the claimant's "last employer" "means the employer that *** is charged for benefit payments which become benefit charges under this Section." 820 ILCS 405/1502.1(E) (West 1994); see 284 Ill. App. 3d at 364-65.

According to the appellate court, section 1502.1 links a claimant's eligibility for benefits to an employer's benefit charges: "Until a claimant becomes employed to the extent that his new employer becomes chargeable for benefits (basically 30 days), the claimant remains 'last employed' with (and barred from receiving benefits from) the employer with whom he was originally embroiled in a labor dispute." The appellate court concluded that "[s]ection 1502.1 of the Act accordingly now sets out a required length of employment before disqualification under section 604 is ended." 284 Ill. App. 3d at 365.

We disagree with the appellate court. Section 604 of the Act was unambiguous in 1979 when this court decided *Dienes* and remains so. We conclude that *Dienes* controls the outcome of this case.

However, the appellate court looked to section 1502.1 of the Act to read section 604 other than in the way it was written. This attempt fails. Section 1502.1(E) plainly states that its definition of "last employer" is "[f]or the purposes of Sections 302, 409, 701, 1403, 1404, 1405 and 1508.1." 820 ILCS 405/1502.1(E) (West 1994). Further, those sections contain cross-references to section 1502.1. 820 ILCS 405/302, 409, 701, 1403, 1404, 1405, 1502.1(E), 1508.1 (West 1994).

The appellate court was properly "troubled by the fact that section 604 of the Act is not listed in section 1502.1(E)." 284 Ill. App. 3d at 365. We repeat that the statutory language itself gives the best indication of legislative intent. Where a statute lists the things to which it refers, there is an inference that all

omissions should be understood as exclusions. *Burke v. 12 Rothschild's Liquor Mart, Inc.*, 148 Ill. 2d 429, 441-42 (1992).

This rule of statutory construction, *expressio unius est exclusio alterius*, is based on logic and common sense. It expresses the learning of common experience that when people say one thing they do not mean something else. The maxim is closely related to the plain language rule in that it emphasizes the statutory language as it is written. 2A N. Singer, Sutherland on Statutory Construction § 47.24, at 228, § 47.25 at 234 (5th ed. 1992).

The appellate court cited two reasons for reading the requirements of section 1502.1 of the Act into section 604, despite the fact that section 1502.1(E) does not list section 604. First, the appellate court stated that "[t]here is no indication this list was intended to be exclusive." 284 Ill. App. 3d at 365.

However, the inference that all omissions should be understood as exclusions stands despite the lack of any negative words of limitation. *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.*, 158 Ill. 2d 76, 82 (1994); *City Savings Ass'n v. International Guaranty & Insurance Co.*, 17 Ill. 2d 609, 612 (1959). Thus, the absence of section 604 from section 1502.1(E)'s list infers the legislative intent that section 1502.1's definition of "last employer" is exclusive to the sections cited in the list. An explicit statement of such intent is unnecessary.

Second, the appellate court reasoned that if it did not apply section 1502.1's definition of "last employer" to the term "last employed" in section 604, these substantially same terms would have different meanings in the same statute. The appellate court invoked the principle that where the same or substantially the same words or phrases appear in different parts of a statute, they should be given a consistent meaning unless a contrary legislative intent is clearly expressed.

284 Ill. App. 3d at 365; see *Moran v. Katsinas*, 16 Ill. 2d 169, 174 (1959).

However, the legislature did clearly express a contrary intent. Sections 604 and 1502.1 address different subjects. In section 604, the legislature prohibited an employee from receiving unemployment benefits based on a labor strike at the place where the employee was last employed. The legislature subsequently created in section 1502.1 a detailed test to determine an employer's benefit charges. After enacting section 1502.1, the legislature specifically enacted subsection (E), which lists the other sections of the Act to which it refers. The legislature also specifically cross-referenced those sections to section 1502.1. The legislature's use of certain language in one instance and different language in another indicates that the legislature intended different results. *Nelson v. Union Wire Rope Corp.*, 31 Ill. 2d 69, 100 (1964).

If the legislature had intended to apply section 1502.1's definition of "last employer" to section 604, it would have expressly done so, as it did with several other sections of the Act. The fact that the legislature did not cannot be deemed to be inadvertent. See, *e.g.*, *Russello v. United States*, 464 U.S. 16, 22-23, 78 L. Ed. 2d 17, 23-24, 104 S. Ct. 296, 300 (1983); *Peoria Savings & Loan Ass'n v. Jefferson Trust & Savings Bank*, 81 Ill. 2d 461, 469-70 (1980); *Siciliano v. Village of Westchester Firefighters' Pension Fund*, 202 Ill. App. 3d 964, 967 (1990).

We recognize that the principle that the expression of one thing in a statute excludes any other thing is only a rule of statutory construction, not a rule of law. It is merely a rule that courts use to help them ascertain the intent of the legislature where such intent is not clear from the statute's plain language. The maxim is applied only when it appears to point to the intent of

the legislature, not to defeat the ascertained legislative intent. The rule may be overcome by a strong indication of legislative intent. *Illinois Central R.R. Co. v. Franklin County*, 387 Ill. 301, 313-14 (1944); accord *Sulser v. Country Mutual Insurance Co.*, 147 Ill. 2d 548, 555 (1992). In the present case, however, we find that section 1502.1(E)'s specific reference to other sections of the Act, which cross-references to section 1502.1, reveals a clear legislative intent to exclude any other section of the Act which section 1502.1(E) does not list. See, *e.g., City Savings Ass'n*, 17 Ill. 2d at 612.

The appellate court noted that an interpretation of section 604 that defined "last employed" as not imposing any durational or good-faith requirement was the minority view in the country. 284 Ill. App. 3d at 363-64. Further, after it incorporated section 1502.1 of the Act into section 604, the appellate court explained that "[s]ection 1502.1 of the Act provides an objective, bright-line method of determining whether an individual has requalified for unemployment benefits and avoids the subjectivity inherent in any type of 'good-faith' inquiry." 284 Ill. App. 3d at 366.

The appellate court essentially rewrote sections 604 and 1502.1(E) of the Act to remedy perceived shortcomings in section 604. However, where the language of a statute is unambiguous, the only legitimate function of the courts is to enforce the law as enacted by the legislature. *Certain Taxpayers v. Sheahen*, 45 Ill. 2d 75, 84 (1970); *Belfield v. Coop*, 8 Ill. 2d 293, 307 (1956); see *Boaden v. Department of Law Enforcement*, 171 Ill. 2d 230, 239 (1996). This cardinal rule applies even though the statutory language may be considered unwise or as impairing the statute as a whole. *Buckellew v. Board of Education of Georgetown-Ridge Farm Community Unit School District No. 4*, 215 Ill. App. 3d 506, 511 (1991). A court may not inject provisions not found in the statute,

however desirable they may appear to be. *Western National Bank v. Village of Kildeer*, 19 Ill. 2d 342, 349-50 (1960). We reverse the judgment of the appellate court.

### Good Faith

We further conclude that, between the circuit court and the Department, the circuit court expressed the better-reasoned view of section 604 of the Act and of *Dienes*. The Department found that a striking employee's interim employment, whatever the circumstances, automatically removed the section 604 disqualification, whether or not the interim employment was *bona fide* or meant to be permanent. The circuit court concluded that a striking employee's good faith in obtaining interim employment was a condition to removing the section 604 disqualification.

The Department's finding cannot stand. This court concluded *Dienes* by noting that the decision was based on the facts of that case. The court expressly declined to consider whether "*every* succeeding or 'last' employment, *whatever the circumstances*, will qualify a claimant for unemployment benefits." (Emphasis added.) *Dienes*, 78 Ill. 2d at 17.

The circuit court correctly read *Dienes* as not drawing "a bright line for labor dispute cases which would allow any kind of employment to restore benefit eligibility." Such a reading of section 604 would violate the long-settled policy of the Act. The Act "must be liberally construed so as to provide sustenance to those who are unemployed through no fault of their own and who are willing, anxious, and ready to work if given the opportunity." *Shell Oil Co. v. Cummins*, 7 Ill. 2d 329, 339 (1955); accord 820 ILCS 405/100, 609 (West 1994). This policy would be violated if striking employees could receive unemployment benefits by obtaining sham employment in bad faith solely to avoid the section 604

disqualification. Thus, a determination of good faith is required in each case.

The circuit court correctly ruled that a showing of good faith is based on all the facts and circumstances:

> "Obviously good faith is absent if a claimant is primarily motivated by a desire to remove the labor dispute disqualification and he or she does not undertake work expected to provide a significant support. Good faith is present if there is a genuine effort to remain in the active workforce and be regularly employed. Good faith does not necessarily require a belief that the interim employment ·will be permanent ***."

We uphold the judgment of the circuit court.

We lastly note that all parties who filed briefs in this appeal, claimants, Bridgestone, the Department, and the Illinois Manufacturers' Association as *amicus curiae*, invoke the public policy underlying section 604 in support of their respective positions. Section 604 "evinces the legislative determination that the State is to remain neutral in labor disputes and collective bargaining, rendering assistance to neither the employer nor labor." *Local 7—641 v. Department of Labor*, 96 Ill. 2d 94, 98 (1983).

However, as we concluded in *Dienes*, a neutrality policy does not directly apply here. The unemployment for which claimants are seeking benefits did not result from the labor dispute at Bridgestone, but rather from their having been fired or laid off from their interim employment. "They therefore were within the class of employees which the Act was designed to assist. That they may earlier have gone on strike at another place of employment would not seem to have a necessary bearing on eligibility under the Act if they later were employed elsewhere." *Dienes*, 78 Ill. 2d at 17.

## CONCLUSION

The language of section 604 of the Act is certain and unambiguous. Of course, the legislature can, subject to

constitutional restraints, add any additional require-
ment to section 604 in any way it sees fit, including the
approach envisioned by the appellate court. This is a
task for the legislature—not the courts.

For the foregoing reasons, the judgment of the ap-
pellate court is reversed, and the judgment of the circuit
court of Macon County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE HEIPLE, dissenting:

I fully agree with the majority that the purposes of
the Unemployment Insurance Act (the Act) (820 ILCS
405/100 (West 1994)) would be frustrated "if striking
employees could receive unemployment benefits by
obtaining sham employment." 179 Ill. 2d at 155. The
task which confronts this court, however, is to identify
and enforce those safeguards established by the Act to
prevent such abuse. The majority instead imposes a
condition for the receipt of unemployment benefits
which is wholly absent from the Act and, in doing so,
neglects the only interpretation of the Act which
plausibly comports with the legislature's directives. I
therefore respectfully dissent.

In plain language, section 604 of the Act prohibits
an employee from receiving unemployment benefits
while he is on strike from the establishment at which
he was "last employed." 820 ILCS 405/604 (West 1994).
In *Dienes v. Holland*, 78 Ill. 2d 8 (1979), this court held
that, as used in the statute, "last employed" means
simply "last in time." *Dienes*, 78 Ill. 2d at 13-14. In so
holding, this court refused "to add any additional condi-
tions to the statute in order to qualify a claimant for
benefits." *Dienes*, 78 Ill. 2d at 14.

In direct contravention of this precedent, the major-
ity adds a judicial gloss to the Act by providing that
striking claimants may qualify for unemployment

benefits if they can show that they accepted interim employment in "good faith." The majority asserts that this requirement is consistent with *Dienes* because that case was based only on its specific facts. 179 Ill. 2d at 155. On the contrary, however, one of the conditions which the *Dienes* court specifically considered but refused to add to the statute was a good-faith test. See *Dienes*, 78 Ill. 2d at 13. In adopting such a test today, the majority does what *Dienes* refused to do: that is, provide a claimant the opportunity to establish something in addition to what the statute requires in order to qualify for benefits. *Dienes*, 78 Ill. 2d at 15.

It is no surprise that the legislature has not imposed the requirement adopted today by the majority. The good-faith inquiry will subject both the claimant and the Department of Employment Security to onerous burdens. To qualify for benefits, the striking claimant will henceforth be required to show that, in accepting interim employment, he was not "primarily motivated by a desire to remove the labor dispute disqualification." To withhold benefits, the Department will be required to establish that the claimant did not make " 'a genuine effort to remain in the active workforce.' " 179 Ill. 2d at 156. Due to the subjective nature of these inquiries, it is doubtful whether either of these factors can be satisfactorily proven. It is certain, however, that valuable resources will be squandered in the attempt.

In sharp contrast to the majority's approach, the appellate court correctly based its analysis solely on the language of the Unemployment Insurance Act (820 ILCS 405/100 (West 1994)). Nine years after this court decided *Dienes*, the General Assembly enacted section 1502.1 of the Act. This section requires that the *last employer* from whom an unemployment claimant was separated after working for at least 30 days pay the benefit charges arising from that claimant's unemployment. 820 ILCS

405/1502.1 (West 1994). Section 604, however, continued to prohibit a claimant from receiving benefits while on strike from the establishment at which he was *last employed*. 820 ILCS 405/604 (West 1994). The instant case requires this court, for the first time, to apply section 1502.1's scheme for assessing benefit charges to section 604's prohibition against employees receiving unemployment benefits while on strike.

The appellate court reasoned that, to harmonize these two provisions, section 604 must be interpreted to withhold benefits from striking workers who obtain interim employment for less than 30 days. This is because if benefits are instead granted to a claimant who works for an interim employer for less than 30 days, section 1502.1 would require the original employer, from whom the employee is still on strike, to pay the claimant's benefits, rather than the interim employer, who made the claimant eligible for benefits by firing him. The appellate court correctly concluded that this would violate the policy embodied in section 604 that strikers are prohibited from collecting unemployment benefits at the struck employer's expense. Yet this is precisely the result dictated by the majority's holding: if a claimant worked for an interim employer for less than 30 days (as did most of the instant appellants), but nevertheless were found to have obtained that interim employment in "good faith," Bridgestone, the very firm the claimant is striking, will be assessed payment for the claimant's unemployment benefits. The appellate court's proper construction of the Act instead assures that unemployment benefits will not be charged to the employer from whom an employee is on strike.

A simple, straightforward requirement that striking workers hold interim employment for at least 30 days before becoming eligible for unemployment benefits is thus the only plausible interpretation of the current

version of the Act. The appellate court's opinion is correct. As opposed to the majority's analysis, it is based entirely upon the language of the Act. In erroneously charging that the appellate court "rewrote" the statute "to remedy perceived shortcomings" (179 Ill. 2d at 154), the majority describes only its own gratuitous behavior. I would affirm the appellate court's faithful adherence to the statute.

JUSTICES MILLER and NICKELS join in this dissent.