(No. 33429.—

FLORENCE E. BUCHHOLZ *et al.*, Appellants, *vs.* ROY F. CUMMINS, Director of Labor, *et al.*, Appellees.

*Opinion filed September 23, 1955.*

O'Connor & Ghiglieri, and Heyl, Royster & Voelker, both of Peoria, (Gerald M. O'Connor, and William J. Voelker, Jr., of counsel,) for appellants.

Latham Castle, Attorney General, of Springfield, (William C. Wines, Raymond S. Sarnow, and A. Zola Groves, of counsel,) for appellee Roy F. Cummins, Director of Labor, and Robert S. Calkins, of Peoria, for Peoria Restaurant Association and defendant employers.

Mr. Justice Davis delivered the opinion of the court:

This is an appeal under the Administrative Review Act to review an order of the circuit court of Peoria County affirming the decision of the Director of Labor, finding the plaintiffs ineligible for benefits under the Unemployment Compensation Act. The sole question we are called upon to decide is whether or not the facts in the record sustain the finding of the Director that plaintiffs' unemployment was caused by a labor dispute at the establishment where they were last employed within the meaning of the act.

The plaintiffs, some 225 persons, are members of a labor organization, the Cooks, Waiters, and Waitresses Union, Local 327, (herein called the Union,) and worked

as cooks, waiters, porters and dishwashers for certain members of defendant, The Peoria Restaurant Association, (herein called the Association,) which was composed of restaurant and cafeteria operators in and near Peoria. For several years prior to January 31, 1950, the Union and the Association had negotiated labor contracts on behalf of their respective members and the Union was recognized as the sole bargaining agent for all claimants and the Association as the sole bargaining agent for its members. One such collective bargaining agreement was due to expire on January 31, 1950, and the Union and the Association were again negotiating a new contract. There was apparently no automatic extension provision in the old agreement, and the negotiations were futile prior to the expiration of the old contract. On February 1, 1950, the restaurant operators issued bulletins to their employees giving notice that the Association and the Union had been unable to agree; that no contract was in existence; that wages were to be reduced to 1948 levels; and that as of February 1, the employees were free to join or refrain from joining any labor organization. The Union held a meeting February 5, and reported that nine employer members of the Association had cut wages. Union demands were summarized at this meeting.

On February 10, the workers at the Palace Cafeteria, a member of the Association, withdrew their services and established a picket line. There is little evidence to show the exact cause of the strike and picketing at the Palace, or the issues in dispute between the management of the Palace and its employees, but apparently it was caused by the discharge of two employees. The evidence does show that the members of the Association had entered into an agreement to close all restaurants if a strike was called against any member of the Association and that the Union knew of this agreement. On February 10, at midnight, all of the restaurants closed stating that the action was pur-

suant to the Association's agreement. While the restaurants remained closed, contract negotiations continued between the Association and the Union until March 13, 1950, when a new collective bargaining agreement was reached. On the following day the restaurants opened and the employees returned to work.

Thereafter the plaintiffs claimed unemployment compensation under the Unemployment Compensation Act then in force. (Ill. Rev. Stat. 1949, chap. 48, pars. 217 *et seq.*) The employers contended that the plaintiffs were ineligible for compensation by virtue of section 7(d) of the act (Ill. Rev. Stat. 1949, chap. 48, par. 223) which provides that a claimant shall be ineligible for benefits, "for any week with respect to which it is found that his * *. * unemployment is due to a stoppage of work which exists because of a labor dispute at the * * * establishment, * * * at which he is or was last employed." The deputy Director of Labor found the claimants ineligible under section 7(d), which determination was affirmed by the Director and later by the circuit court on appeal under the Administrative Review Act. This case properly comes here on appeal from the decision of the circuit court.

Plaintiffs contend that there is no evidence sufficient to show that their unemployment was caused by a labor dispute at the establishments at which they were employed; that the fact that a labor dispute and a work stoppage were coincidental in time does not prove causation; that the work stoppage was caused by the dispute at the Palace, coupled with the agreement between the members of the Association, both of which were unrelated to the dispute between the Union and the Association.

Defendants, however, point out that the events taken in their logical sequence support the finding that the work stoppage was caused by the dispute between these plaintiffs and their employers; that the agreement between the members of the Association to lock out in concert, and the ulti-

mate lockout, would not have occurred "but for" the dispute between the Union and the Association. They also point out that the lockout ceased immediately upon the agreement between the Association and the Union.

At the outset we must consider the legislative policy contained in the Unemployment Compensation Act. It is not novel. Every State in the union has similar legislation. About 43 States follow, in general fashion, the original English statute, similar to our own, and embody in it some form of provision for ineligibility when work stoppage is caused by labor disputes. (See *Unemployment Compensation Com.* v. *Aragon,* 329 U.S. 143.) About eight States, however, make some exception, either by amendment or in the original legislation, to the labor dispute provision in cases of lockout, treating it as a distinct type of labor dispute. A few states, such as California, incorporate a test of voluntariness, disqualifying only those who "leave their work" because of a labor dispute. See *Bunny's Waffle Shop, Inc.* v. *California Employment Com.* 24 Cal. 2d 735, 151 Pac. 2d 224; *Barnes* v. *Hall,* 285 Ky. 160, 146 S.W. 2d 929; *Bucko* v. *Quest Foundry Co.* 229 Minn. 131, 38 N.W. 2d 223; *Almada* v. *Administrator, Unemployment Compensation Act,* 137 Conn. 380, 77 Atl. 2d 765.

The general purpose of the Illinois Act, as expressed in section 1, is to relieve involuntary unemployment. However, section 7(d) specifically disqualifies any individual for benefits for any week in which it is found that his unemployment is due to a stoppage of work which exists because of a labor dispute at the establishment at which he is or was last employed. By this provision the Illinois legislature adopted the policy that the State shall not, by payment of unemployment compensation, assist one party to a labor dispute, regardless of fault; and that the State in cases of industrial strife ought not take sides and place blame. This provision was designed to maintain the neutrality of the State in labor disputes. This labor dispute

clause is a departure from the general idea of relief from involuntary unemployment. The question of voluntariness in such a case is not the test. (*Abbott Publishing Co.* v. *Annunzio,* 414 Ill. 559.) If a labor dispute results in the closing of a plant or factory, the statute does not place the blame, but considers the resulting unemployment as caused by a labor dispute. *American Steel Foundries* v. *Gordon,* 404 Ill. 174; *Fash* v. *Gordon,* 398 Ill. 210.

The term "labor dispute," within the meaning of section 7(d), has been defined as any controversy concerning wages, hours, working conditions or terms of employment. *Local Union No. 222* v. *Gordon,* 406 Ill. 145; *Fash* v. *Gordon,* 398 Ill. 210; *Local Union No. 11* v. *Gordon,* 396 Ill. 293.

Section 7(c)(2) of the Unemployment Compensation Act in effect in 1950, declares ineligible for benefits any person who refuses to accept suitable work when offered him. However, this is modified by the following provisions: "Notwithstanding any other provisions of this Act, no work shall be deemed suitable and benefits shall not be denied under this Act to any otherwise eligible individual for refusing to accept new work under any of the following conditions: If the position offered is vacant due directly to a strike, lockout or other labor dispute." This section of the act recognizes a lockout as one form of a labor dispute. In *Local Union No. 11* v. *Gordon,* 396 Ill. 293, at page 299, this court stated, "It is plain that, under any definition, a labor dispute includes a strike. (*Walgreen Co.* v. *Murphy,* 386 Ill. 32; *Sandoval* v. *Industrial Com.* 110 Colo. 108.) The act itself so provides where it states that '* * * benefits shall not be denied under this Act to any otherwise eligible individual for refusing to accept new work under any of the following conditions: If the position offered is vacant due directly to a strike, lockout or other labor dispute; * * *.' (Ill. Rev. Stat. 1945, chap. 48, par. 223(c)(2)." And at page 300, this court stated, "We

have recently held that a strike may be generally defined as a stoppage of work by common agreement for the purpose of obtaining or resisting a change in the conditions of employment. (*Walgreen Co.* v. *Murphy,* 386 Ill. 32.)" Experience and logic bring this court to the conclusion that a labor dispute, within the purview of our statute, includes a lockout. The courts of other States, with similar statutes, have held that a lockout is a labor dispute within the contemplation of the disqualifying provision of the act. *Adkins* v. *Indiana Employment Secur. Division,* 117 Ind. A. 132, 70 N.E. 2d 31; *In re North River Logging Co.* 15 Wash. 2d 204, 130 Pac. 2d 64.

We think it clear under the Illinois statute, that there is no distinction in principle between a lockout and a strike. This view is fortified by the decision of other courts where the word lockout has been defined as "a cessation of the furnishing of work to employees in an effort to get, for the employer, more desirable terms;" ·(*Iron Molders Union No. 125* v. *Allis-Chalmers Co.* 166 Fed. 45;) and as a "suspension of operations by the employer resulting from a dispute with his employees over wages, hours, or working conditions." (*In re North River Logging Co.* 15 Wash. 2d 204, 130 Pac. 2d 64.) However, not every shut-down or plant closing by an employer is a lockout within the meaning of the statute, or in the sense of being one of the economic weapons in the arsenal of combatants in a labor dispute. The sole question we must decide here is not whether the work stoppage was caused by employer or employee, by lockout or strike, but whether or not this particular work stoppage was caused by a labor dispute at the establishments where these plaintiffs were last employed.

There was clearly a labor dispute existing between the Union of which the plaintiffs were members and defendant Association at the time of the lockout. A contract had expired; both the plaintiffs, through the Union, and the employers, through the defendant, the Association, had

made demands concerning wages and conditions of employment; these demands had not been accepted or compromised. But plaintiffs contend that there is no evidence that this condition of labor unrest was the cause of the lockout. It must be conceded that there is no direct evidence that the lockout was a coercive economic weapon designed to accomplish a specific collective bargaining end for the Association. However, we feel that the evidence was sufficient for the Director to find, as he did, that the Association's agreement to close in the event of a strike against one member, was a measure undertaken as a result of the pending labor dispute. When one considers the chronology of the events surrounding this dispute, the lockout appears in its proper perspective. Pursuant to well established practice, the Association and the Union bargained for a labor contract. The negotiations were at a standstill and the contract expired. While the bargaining continued there was a strike at one of the member restaurants involved in the negotiations. In retaliation, the Association locked the doors of all their establishments. Bargaining under the aegis of the lockout, the Association came to an agreement with the Union, the lockout ceased, and the employees returned to work. Plaintiffs earnestly contend that this is all coincidence; that there is no substantial evidence to show that the lockout was caused by their labor dispute with their employers. We cannot agree. True, there is no evidence of the actual subjective intent or reasoning of the Association in calling the lockout, but we cannot believe that such evidence is required. We find a full-fledged labor dispute existing between the Association and the Union, and we find a lockout during the progress of that dispute. The fact that the lockout was triggered by certain vague events at the Palace does not alter the situation. If these plaintiffs had walked out because of the dispute at the Palace, could it be said that the strike was not caused by a labor dispute? And, if the plaintiffs,

through the Union, had called a strike because of the expiration of the contract between the Union and the Association, could it be said that the strike was not caused by a labor dispute? The facts of industrial relations reveal that any one of a number of unrelated events may act as the catalyst to foment a strike or lockout, but the end result is that of one group exerting economic pressure upon another. In such case our legislature has determined that benefits will not be paid under the Unemployment Compensation Act.

We do not consider the wisdom of the Association's agreement, nor their judgment in calling a lockout. We do not judge their motives. But we cannot escape the conclusion that the lockout would not have occurred but for the difficulties that had arisen between the Association and the Union at the bargaining table. The very difficulties involved in the proof in this case demonstrate the wisdom of the legislative policy in avoiding any attempt to place the blame, or to take sides in a labor dispute. Rather the legislature has decreed that no compensation shall be paid when the work stoppage is caused by a labor dispute, either strike or lockout, at the establishment at which the claimant is or was last employed, and has left the parties to find their remedy through the process of collective bargaining. If the Union has been wronged it may seek redress at the bargaining table through the exercise of its potential economic power. Upon considering the policy of the act, we do not believe that it requires clear and convincing proof of the precise subjective motivation for a strike or lockout. It is sufficient that the work stoppage would not have occurred but for the dispute between the employee and his employer.

Findings of the Director of Labor on questions of fact which are not manifestly against the weight of the evidence and which are substantiated by the evidence in the record will not be disturbed on review. (*Abbott Publishing Co.* v.

*Annunzio,* 414 Ill. 559; *Mohler* v. *Department of Labor,* 409 Ill. 79; *Local No. 658* v. *Brown Shoe Co.* 403 Ill. 484.) We feel that this case comes within the above pronouncement.

Accordingly, the judgment of the circuit court of Peoria County is affirmed.                    *Judgment affirmed.*