(No. 56775.—

LOCAL 7—641, OIL, CHEMICAL & ATOMIC WORKERS INTERNATIONAL UNION, AFL-CIO, *et al.*, Appellants, v. THE DEPARTMENT OF LABOR *et al.*, Appellees.

*Opinion filed April 22, 1983.—Rehearing denied May 27, 1983.*

Stephen A. Yokich and Barbara J. Hillman, of Cornfield & Feldman, of Chicago, for appellants.

Tyrone C. Fahner, Attorney General, of Springfield, and Lawrence I. Kipperman and David F. Johnson, of Sidley & Austin, of Chicago (Michael T. Prousis, Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE UNDERWOOD delivered the opinion of the court:

The question presented is whether the employees in this case, who claim that they were "constructively" locked-out by their employer as a result of a labor dispute between the parties, are entitled to unemployment compensation benefits by virtue of the 1975 amendment to section 604 of the Unemployment Insurance Act (Ill. Rev. Stat. 1975, ch. 48, par. 434). A claims adjudicator of the Division of Unemployment Insurance determined that the employees were ineligible for benefits, and the Director of Labor, adopting the report and recommendation of his representative, denied benefits. The circuit court of Cook County affirmed the Director's decision, and the appellate court affirmed (106 Ill. App. 3d 476). We allowed the plaintiffs' petition for leave to appeal.

Approximately 140 production, maintenance and laboratory workers who belonged to the Oil, Chemical and Atomic Workers International Union, Locals 7-641 and 7-641A, were employees of defendant Velsicol Chemical Corporation on December 6, 1977, just prior to the work stoppage. A collective-bargaining agreement between the parties expired at midnight on that date. Prior thereto, there had been some 13 bargaining sessions, and although the parties were able to resolve some of their differences, they failed to negotiate a new collective-bargaining agreement. There were apparently several offers and counteroffers rejected by both sides during the negotiations. On December 6, each side rejected the other's latest proposed interim offer. After the existing contract expired, the employees did not report to work and pickets appeared at the plant entrance with signs stating that the workers were on strike. Non-union salaried personnel crossed the picket line each day and sometime thereafter restored normal production. A new collective-bargaining agreement was reached on April 8, 1978, and

the union employees returned to work. It is these employees who seek unemployment compensation benefits for the period of December 7, 1977, through April 8, 1978.

Although there are certain factual disputes between the parties concerning the merits of the labor dispute and the parties' respective proposals, there is no disagreement regarding those facts which we deem necessary for resolution of this case under the applicable statutory provision. Section 604 of the Unemployment Insurance Act, in relevant part, provides:

"Labor dispute. An individual shall be ineligible for benefits for any week with respect to which it is found that his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed. The term 'labor dispute' does not include an individual's refusal to work because of his employer's failure to pay accrued earned wages within 10 working days from the date due, or to pay any other uncontested accrued obligation arising out of his employment within 10 working days from the date due. This Section shall not apply if it is shown that (A) the individual is not participating in or financing or directly interested in the labor dispute which caused the stoppage of work and (B) he does not belong to a grade or class of workers of which immediately before the commencement of the stoppage there were members employed at the premises at which the stoppage occurs, any of whom are participating in or financing or directly interested in the dispute; *provided, that a lockout by the employer or an individual's failure to cross a picket line at such factory, establishment, or other premises shall not, in itself, be deemed to be participation by him in the labor dispute.*" (Emphasis added.) Ill. Rev. Stat. 1975, ch. 48, par. 434.

There is no question that the employees, during the period for which they claim benefits, were unemployed due to a stoppage of work at Velsicol which existed because of a labor dispute at that company. Similarly, it is clear that

the individual employees were directly interested in the labor dispute which caused the stoppage of work, and no argument to the contrary is made. Plaintiffs do argue, however, that the terms under which they would have been required to work pending continued negotiations—Velsicol's interim offer—were materially and significantly worse than the *status quo* and they were therefore constructively locked out. Thus, they conclude that regardless of their participation or interest in the labor dispute, since they were locked out, they are entitled to benefits under the Act. We do not agree. We need not and do not decide the factual dispute between the parties concerning whether the terms of Velsicol's final or interim offer were onerous or significantly worse than the terms of the existing contract. Regardless of whether the individual plaintiffs and other members of the plaintiff union involved in the labor dispute were strikers or constructively locked out employees, we hold that they are ineligible for benefits under the Act because they were directly interested in the labor dispute which caused the stoppage of work.

The term "labor dispute" has been defined in previous decisions as "any controversy concerning wages, hours, working conditions or terms of employment" (*Buchholz v. Cummins* (1955), 6 Ill. 2d 382, 387, citing *Local Union No. 222 v. Gordon* (1950), 406 Ill. 145, 150; *Fash v. Gordon* (1947), 398 Ill. 210, 216; *Local Union No. 11 v. Gordon* (1947), 396 Ill. 293, 299), and under our act a labor dispute includes a lockout as well as a strike (*Buchholz v. Cummins* (1955), 6 Ill. 2d 382, 387-88). The labor-dispute disqualification contained in our act, which is not uncommon (*Dienes v. Holland* (1979), 78 Ill. 2d 8, 12), evinces the legislative determination that the State is to remain neutral in labor disputes and collective bargaining, rendering assistance to neither the employer nor labor. (*General Motors Corp. v. Bowling* (1981), 85 Ill. 2d 539, 546; *Buchholz v. Cummins* (1955), 6 Ill. 2d 382, 386.) Acceptance of plain-

tiffs' arguments here, where the employees are directly interested in the work stoppage, would require our increased involvement in labor disputes, a determination of the reasonableness of the parties' bargaining positions, and awarding or denying benefits accordingly. We cannot believe that the legislature intended, by adopting the 1975 proviso, to thereby nullify this State's firmly established policy of neutrality. There is nothing in the legislative debates to indicate any intent to make a change of such magnitude. We think it is apparent from the language of the amendment, the primary source for interpretation (*Totten v. State Board of Elections* (1980), 79 Ill. 2d 288, 292; *Illinois Telephone Association v. Illinois Commerce Com.* (1977), 67 Ill. 2d 15, 20), that the legislature did not so intend.

The pertinent language is as follows: "provided, that a lockout by the employer or an individual's failure to cross a picket line *** shall not, *in itself*, be deemed to be participation by him in the labor dispute." (Emphasis added.) (Ill. Rev. Stat. 1975, ch. 48, par. 434.) We agree with the appellate court that the phrase "in itself" is significant. Had the legislature intended to compensate locked-out employees who were directly involved in the underlying labor dispute, it could have expressly excluded a lockout, constructive or otherwise from the definition of labor dispute, or it could have plainly stated that the disqualification would not apply if the employee was locked out, thus making it apparent that a lockout would henceforth be treated as a distinct type of labor dispute. In the minority of States that have chosen to so characterize a lockout, the language of the statute is clear. Typically, the statute provides that an individual is ineligible for benefits if his unemployment is due to a stoppage of work which exists because of a labor dispute "other than a lockout." *E.g.,* Ohio Rev. Code Ann. sec. 4141.29(D)(1)(a)(1980); 43 Pa. Stat. Ann. sec. 802(d) (1964); see also Ky. Rev. Stat. sec. 341.360(1) (1982 Supp.)

("[A] lockout shall not be deemed to be a strike or a bona fide labor dispute and no worker shall be denied benefits by reason of a lockout"); Minn. Stat. Ann. sec. 268.09(3)(b) (1982 Supp.) ("Nothing in this subdivision shall be deemed to deny benefits to any employee: *** (b) who becomes unemployed because of a lockout"); see generally Annot., 62 A.L.R.3d 437 (1975); Lewis, *The Lockout Exception: A Study in Unemployment Insurance Law and Administrative Neutrality*, 6 Cal. Western L. Rev. 89 (1969).

Prior to the amendment, an employee who failed to cross a picket line of another labor organization of the employer because of "respect" for that picket line was not entitled to benefits though he otherwise had no interest in or connection with the labor dispute. (*Sangamo Electric Co. v. Donnelley* (1962), 26 Ill. 2d 348; *American Brake Shoe Co. v. Annunzio* (1950), 405 Ill. 44.) The act of honoring the picket line, by itself, amounted to "participation" by the employee in the labor dispute, thus making him ineligible for benefits. As we stated in *Owens-Illinois, Inc. v. Bowling* (1983), 95 Ill. 2d 397, a case also decided this term, the "proviso" was intended to overturn those decisions. We do not believe, however, that the legislature intended also to overturn the decision in *Buchholz* or the neutrality policy of this State by allowing benefits to locked-out employees who are directly involved in the labor dispute which caused the lockout. Rather, it seems clear that the legislature intended only that a locked-out employee, like the employee who honors the picket line, who is otherwise not participating in, financing or directly interested in the labor dispute which caused the work stoppage would not be deemed a "participant" in the labor dispute.

For the reasons stated, the appellate court's judgment is accordingly affirmed.

*Judgment affirmed.*