WILLIE ROSS *et al.*, Plaintiffs-Appellants, v. THE DEPARTMENT OF
EMPLOYMENT SECURITY, Sally A. Ward, Director, *et al.*, Defendants-
Appellees.

First District (6th Division) No. 1—89—1211

Opinion filed July 6, 1990.

Martin J. Rubin, of Schwartz & Rubin, and David L. Gore, of Kleiman & Whitney, both of Chicago, Bernard Kleiman and Carl B. Frankel, both of United Steelworkers of America, of Pittsburgh, Pennsylvania, and Jeremiah A. Collins and Virginia A. Seitz, both of Washington D.C., for appellants.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Jennifer A. Keller, Assistant Attorney General, of Chicago, of counsel), for appellees State of Illinois, Department of Employment Security, and Sally A. Ward.

Gessler, Flynn, Fleischmann, Hughes & Socol, of Chicago, and James T. Carney, of Pittsburgh, Pennsylvania (Luanne Ellison, of counsel), for other appellees.

JUSTICE RAKOWSKI delivered the opinion of the court:

The subject of this appeal is an order entered by the circuit court of Cook County on administrative review affirming the decision of the Director of the Department of Employment Security (Department) that plaintiffs were ineligible to receive unemployment insurance benefits under section 604 of the Unemployment Insurance Act (Ill. Rev. Stat. 1985, ch. 48, par. 434). The issue on appeal is whether the circuit court erred in affirming the decision of the Department that plaintiffs were unemployed as a result of a labor dispute and, therefore, ineligible for benefits.

Plaintiffs were the production and maintenance employees of the

South Works plant of USX Corporation in Chicago (formerly known as United States Steel). The plaintiffs were represented for the purpose of collective bargaining by the United States Steelworkers of America (union), and they were covered by a collective bargaining agreement that was due to expire on August 1, 1986. Evidence presented at the administrative hearing established that the union adopted a policy statement calling upon USX and other represented steel companies to engage in early collective bargaining. In January 1986, the union sent a copy of the policy statement with a letter to the executive officers and negotiators of the represented steel companies, including USX, but USX did not respond to the union's letter. However, USX had made a proposal to the union in December 1985, to negotiate a new contract prior to the union's negotiations with the other companies, but USX claimed that the union never responded to its proposal. USX further stated that it received the union's policy statement and letter proposing early negotiations in January 1986, but that the union's readiness for early negotiations was contingent on the respective steel companies' agreement to join the union's political campaign to secure additional governmental controls on imports. USX was not willing to negotiate on this basis, and it refused the union's offer. The union then negotiated new collective bargaining agreements with the five other steel companies that it represented and did not prepare to negotiate a new contract with USX until the other contracts were completed.

On May 15, 1986, USX sent the union officials notice that it was terminating the existing labor agreement as of August 1, 1986, and that it wanted to negotiate a new contract. On May 20, 1986, the union sent its counter-termination notice. The notices were sent in compliance with the provisions of the existing contract that the parties give notice of their intent to terminate the contract within 60 days of its expiration date. If neither party sent a termination notice, the existing contract would continue. Negotiations for the new contract began on June 12, 1986, and ended in a stalemate on July 31, 1986. During that time, both sides made several proposals and counterproposals regarding wages, as well as other working conditions, but could not reach an agreement.

Around the time that negotiations for the new contract were beginning, the management of the South Works began forecasting that the plant would not be operating during the last week in July and the first week in August. Evidence was also presented that even if agreement on a new contract were reached, the plant would not be operating during this period. Plaintiffs and defendants presented different explanations for the cause of the shutdown. The plaintiffs claimed that it was due to a lack of orders and that negotiations for the new contract were in the

early stages when the shutdown was planned. USX claimed that the shutdown was planned in the event that contract negotiations faltered and a strike occurred. The shutdown of the plant took place in several stages, but by July 31, 1986, the process had been completed, and the plant closed. At midnight of the same day the old contract expired, and the negotiations for a new contract ended.

Following the shutdown of the plant, plaintiffs sought unemployment insurance pursuant to the Unemployment Insurance Act (the Act). A claims adjudicator found plaintiffs ineligible for benefits under section 604 of the Act because their unemployment was due to a labor dispute. Plaintiffs appealed the determination, and a hearing was held before the representative of the Director of the Department. Following the hearing, the Director's representative affirmed the decision of the claims adjudicator. The findings relevant to this appeal were:

"1. A labor dispute existed at the South Works Plant of USX Corporation between USX and USWA starting May 15, 1986.

2. There was a stoppage of work at the South Works [Plant] commencing July 23, 1986.

3. The stoppage of work was caused by the labor dispute.

4. The unemployment of the claimant-appellants was caused by the said stoppage of work due to the labor dispute."

The Director affirmed her representative's decision, and plaintiffs filed a complaint for judicial review of the Department's decision which the circuit court affirmed.

 Plaintiffs contend that the circuit court on administrative review erred in holding that the initiation of collective bargaining constituted a labor dispute within the meaning of the Unemployment Insurance Act. Section 604 of the Act provides:

"Labor dispute. An individual shall be ineligible for benefits for any week with respect to which it is found that his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed." (Ill. Rev. Stat. 1985, ch. 48, par. 434.)

The general purpose of the Act is to provide compensation for those who are involuntarily unemployed. (*Walgreen Co. v. Murphy* (1944), 386 Ill. 32, 36, 53 N.E.2d 390.) However, under section 604 of the Act, an individual is disqualified from receiving benefits where his unemployment is the result of a labor dispute. (*Buchholz v. Cummins* (1955), 6 Ill. 2d 382, 388-89, 128 N.E.2d 900, 904; *Central Foundry Division of General Motors Corp. v. Holland* (1976), 36 Ill. App. 3d 998, 1002, 345 N.E.2d 143.) The legislative purpose underlying this disqualification was

to establish a policy that the State would not, by the payment of compensation, favor one party to a dispute over the other party. (*Buchholz*, 6 Ill. 2d at 382-86.) In order to find a party ineligible for benefits, there must be a specific finding of work stoppage, a labor dispute and proximate causation between the labor dispute and the stoppage of work. (*Central Foundry Division of General Motors Corp.*, 36 Ill. App. 3d at 1002.) A labor dispute is defined as a controversy concerning wages, hours, working conditions or terms of employment. (*Local 7—641, Oil, Chemical & Atomic Workers International Union v. Department of Labor* (1983), 96 Ill. 2d 94, 98, 449 N.E.2d 134; *Local No. 658, Boot & Shoe Workers Union v. Brown Shoe Co.* (1949), 403 Ill. 484, 489, 87 N.E.2d 625.) It may take the form of a strike, lookout or other form of work stoppage. (*Local 7—641, Oil, Chemical & Atomic Workers International Union*, 96 Ill. 2d at 100; *Bankston Creek Collieries, Inc. v. Gordon* (1948), 399 Ill. 291, 298-99, 77 N.E.2d 670.) The statute does not distinguish between the stoppage of work caused by the employer or the employee, provided it is due to a labor dispute. Furthermore, neither the unreasonableness of the demands nor the merits of the dispute are material to the determination of whether a labor dispute actually exists. *Bankston Creek Collieries, Inc.*, 399 Ill. at 298-99.

In this case, the Director's representative found that a labor dispute between USX and the union began on May 15, 1986, when USX notified the union of its intent to terminate the current collective bargaining agreement when the contract expired. The representative also found that there was a stoppage of work at the South Works plant as of July 23, 1986, and that the stoppage of work and unemployment of the plaintiffs were caused by the labor dispute. Based on these findings, plaintiffs were found ineligible for benefits under the Unemployment Insurance Act.

We conclude that the evidence supports the administrative agency's finding that there was a stoppage of work at the plant on July 23, 1986, and that the stoppage of work was caused by a labor dispute. However, we do not find any evidence to support the determination that the labor dispute began on May 15, 1986. The only relevant event which occurred at that time was USX's notice to the union that it was terminating the existing labor agreement when the contract expired on August 1, 1986. In the notice to the union, Bruce Johnston of USX also expressed management's desire to negotiate in "good faith" for a new labor agreement.

The Department and USX argue that the finding of a labor dispute on May 15, 1986, was supported by the evidence because the notice of intent which USX sent to the union on the above date was an action by

the employer which had a bearing upon a controversy regarding wages or conditions of employment. In support of their argument, the Department and USX rely on *Bankston Creek Collieries, Inc.* (399 Ill. at 298), which defines a labor dispute as any action by an employer or labor organization which has a bearing upon a controversy as to wages or conditions of employment. However, contrary to the argument of the Department and USX, we do not find that the above notice of termination was evidence of such a controversy.

Negotiations for the new labor agreement began on June 12, 1986. During the next four weeks, both sides made several proposals and counterproposals regarding changes in the contract provisions, but they could not reach an agreement, and the negotiations ended in a stalemate on July 31, 1986. Therefore, even though there was no evidence of a labor dispute on May 15, 1986, a labor dispute did exist once the negotiations for the new contract began.

■ Although the function of a court on administrative review is generally limited to determining whether the findings of the agency are against the manifest weight of the evidence, this rule is not rigid or inflexible and "where injustice might otherwise result, a reviewing court may consider questions of law not passed upon by an administrative agency. [Citations.] Application of such an exception *** accords with the principle that a reviewing court is concerned primarily with the result reached by the trial court ruling and not with the reasons that court gives for the result it reached." *Wadlington v. Mindes* (1970), 45 Ill. 2d 447, 453, 259 N.E.2d 257.

■ Thus, applying the reasoning of *Wadlington*, we conclude that even though the evidence did not support the finding of a labor dispute on May 15, 1986, the evidence did support the existence of a labor dispute shortly after negotiations for the new contract began. Additionally, it was this controversy or labor dispute which resulted in the stoppage of work at the South Works plant on July 31, 1986, as well as the unemployment of the plaintiffs. For these reasons, we conclude that the determination of the administrative agency that plaintiffs were ineligible for benefits was proper.

Accordingly, the order of the circuit court on administrative review is affirmed.

Judgment affirmed.

LaPORTA, P.J., and McNAMARA, J., concur.