EDWARD GOLAB et al., Plaintiffs-Appellees, v. THE DEPARTMENT OF EMPLOYMENT SECURITY et al., Defendants-Appellants (Hennessey-Forrestal Illinois, Inc., Defendant).

Fourth District    No. 4—95—0528

Argued May 15, 1996.—Opinion filed May 29, 1996.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General and Claudia E. Sainsot (argued), Assistant Attorney General, of counsel), for appellant.

Charles E. Tucker (argued), of Benassi & Benassi, P.C., of Peoria, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

In March 1994, defendant, the Acting Director Lynn Quigley Doherty (Director) of the Department of Employment Security (Department), issued a final decision in favor of defendant, Hennessey-Forrestal, Illinois, Inc. (the company), finding plaintiffs, Edward Golab, John D. Hohimer, Lonnie Scott, Robert Stults, and John Zibutis, ineligible to receive unemployment insurance benefits, pursuant to section 604 of the Unemployment Insurance Act (Act) (820 ILCS 405/604 (West 1992)). In April 1994, plaintiffs filed a complaint seeking administrative review of the Director's decision. In May 1995, the circuit court reversed.

The Director and the Department appeal, arguing that plaintiffs were ineligible for unemployment insurance benefits because their unemployment was due to a work stoppage caused by a labor dispute. We reverse.

## I. BACKGROUND

The company sells and leases construction equipment. Plaintiffs work for the company as mechanics, servicing construction equipment and performing other types of mechanical work as needed. Plaintiffs comprise the entire membership of their local union, Local 965 of the Operating Engineers (Local).

On Friday, April 30, 1993, the Local's contract with the company expired. On Monday, May 3, 1993, Hugo Zahn, the Local's business manager, presented the company's proposed new contract to the Local's members. The members voted to reject the contract and then voted to continue working under the old contract while negotiations continued.

Zahn then informed Tom Hennessey, the company's president, that the Local had rejected the company's offer, but that plaintiffs were willing to continue working under the old contract. Hennessey responded that the Local's members could not work if there was no agreement; when plaintiffs arrived at work on May 3, 1993, management told them to "pack up their tools" and leave.

From April 28, 1993, until June 19, 1993, the company and plaintiffs continued to negotiate a new contract. During this period, the company did not hire replacement workers to fill plaintiffs' positions, and most of the work plaintiffs normally would have performed was not done. Also during this period, picketers from the Local stood outside the company's premises. On June 19, 1993, the parties reached agreement on a new contract.

Plaintiffs filed for unemployment insurance benefits for the time period from May 3 through June 19, 1993, when they did not work at the company. After a Department claims adjudicator determined that they were ineligible for benefits pursuant to section 604 of the Act, plaintiffs requested a hearing before the Director's representative. After a hearing, the representative recommended that the previous determination of ineligibility be set aside and that plaintiffs be deemed eligible for benefits.

In March 1994, the Director issued a decision stating that plaintiffs' unemployment was due to a work stoppage that had occurred as a result of a labor dispute; thus, plaintiffs were ineligible for benefits under section 604 of the Act. 820 ILCS 405/604 (West 1992). Regarding the issue of work stoppage, the Director stated as follows:

> "While there is little evidence regarding the extent of the stoppage of work, Mr. Hennessey testified that his was a small company and during the labor dispute[,] 'we could not perform how we normally would have.' He also testified that '[w]hat work we could get done, we did with anybody that was available.' *** In this case there is no question that a labor dispute existed, that none of the heavy equipment mechanics worked during the relevant period and that all returned to work after the labor dispute ended. *** The fact that there were no heavy equipment mechanics to perform services, that the work had to be done by other people, and that all the mechanics returned to work after the labor dispute compels the conclusion that the employer could not have had substantially normal operations during this period."

In April 1994, plaintiffs sought judicial review of the Director's decision under the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 1992)), and in May 1995, the circuit court reversed the Director's decision, stating that it was "contrary to law and against the manifest weight of the evidence." The court specifically found as follows:

> "1. A work stoppage, involving substantial curtailment of operations, did not occur at the employer's premises during the period May 3, 1993[,] to June 10, 1993.
>
> 2. Claimant-Employees in the class represented by the above-named labor organization did not participate in a work stoppage involving a substantial curtailment of the employer's operations.
>
> 3. The unemployment of the Claimant-Employees beginning May 3, 1993, was not caused by a stoppage of work which existed because of a labor dispute."

The Director and Department appeal, arguing that the circuit court erred in reversing the agency decision because a labor dispute

existed between the company and plaintiffs that caused a work stoppage.

## II. ANALYSIS

Initially, we address plaintiffs' contention that a reviewing court must "independently consider and weigh the evidence underlying the state agency's decision." In support, plaintiffs cite *Sheff v. Board of Review, Illinois Department of Labor*, 128 Ill. App. 3d 347, 350, 470 N.E.2d 1044, 1046 (1984), which states as follows:

> "[Generally,] it is not the proper function of a court to reweigh the evidence previously presented to an administrative decision-maker. [Citation.] But we could not perform our reviewing function at all without weighing the evidence. *** [*I*]*f, after a review of all the evidence, we think it evident that the administrative decision was wrong, it is our duty to reverse.*" (Emphasis added.)

We disagree, and insofar as *Sheff* stands for the proposition that we must—or may—reweigh and reconsider the evidence to properly review an administrative decision, we emphatically reject it.

■ Upon judicial review of an administrative decision, a reviewing court *must not* reweigh the evidence or assess the credibility of witnesses. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88, 606 N.E.2d 1111, 1117 (1992); *Mead v. Board of Review*, 143 Ill. App. 3d 1088, 1095, 494 N.E.2d 171, 176 (1986); *Illini Country Club v. State Property Tax Appeal Board*, 263 Ill. App. 3d 410, 417, 635 N.E.2d 1347, 1353 (1994). The circuit court and appellate court are *limited* to determining whether findings and orders of the administrative body are contrary to the manifest weight of the evidence. *Abrahamson*, 153 Ill. 2d at 88, 606 N.E.2d at 1117; *Mead*, 143 Ill. App. 3d at 1094, 494 N.E.2d at 176. Further, in cases dealing with unemployment insurance benefits, the Director is the trier of fact, and a reviewing court must consider her decisions *prima facie* correct. 820 ILCS 405/2303 (West 1992).

The Director and Department next argue that the circuit court erred by reversing the agency finding that a labor dispute existed between the company and plaintiffs that caused a work stoppage. Plaintiffs contend—and the court agreed—that (1) no labor dispute existed; (2) no work stoppage occurred; and (3) even if both existed, the labor dispute did not cause the work stoppage.

■ Section 604 of the Act provides that an employee shall be ineligible for unemployment insurance benefits for any time in which unemployment is "due to a stoppage of work which exists because of a labor dispute." 820 ILCS 405/604 (West 1992). Thus, ineligibility for benefits is based on three factors: (1) the existence of a labor dispute at the employer's premises; (2) the existence of a work stop-

page; and (3) proximate causation between the labor dispute and the work stoppage. *Ross v. Department of Employment Security*, 201 Ill. App. 3d 474, 478, 559 N.E.2d 100, 102 (1990).

■ For purposes of section 604 of the Act, the term "labor dispute." means " 'any controversy concerning wages, hours, working conditions or terms of employment.' " *Local 7—641 v. Department of Labor*, 96 Ill. 2d 94, 98, 449 N.E.2d 134, 136 (1983), quoting *Buchholz v. Cummins*, 6 Ill. 2d 382, 387, 128 N.E.2d 900, 903 (1955); see also *Ross*, 201 Ill. App. 3d at 478, 559 N.E.2d at 102.

Plaintiffs contend that no labor dispute existed once they unconditionally agreed to return to work, stating as follows:

> "[T]here simply was no 'labor dispute' in existence between Hennessey and the Claimants when Hennessey told the Claimants to 'pack their tools' and to go home *** because Mr. Zahn told Mr. Hennessey that the Local's offer to work under the terms specified by the employer was 'unconditional.' *** The Claimants never placed any restrictions on their 'unconditional offer(s)' to return to work, nor did they place any conditions on the wages, hours of employment, working conditions, retroactivity, or other terms of employment under which they were willing to return to work. ***
>
> *** [T]he Local's 'unconditional offer(s)' to work constituted complete and unconditional surrender by the Local. *** Clearly, under such circumstances, there was no 'labor dispute' because nothing was left in controversy between the parties."

We reject this argument that no labor dispute existed once the Local "unconditionally" agreed to return to work during the negotiation period. Although plaintiffs were willing to work temporarily under the terms of their previous contract, the wages, terms, and conditions of their next contract remained unresolved. Where a contract has expired and employees and the employer have not agreed to a new contract, a labor dispute exists for the purposes of section 604 of the Act. See *Buchholz*, 6 Ill. 2d at 388-89, 128 N.E.2d at 903-04 (holding that a labor dispute exists where a contract has expired, both parties have submitted demands concerning wages and conditions of employment, and these demands have "not been accepted or compromised"); see also *Central Foundry Division of General Motors Corp. v. Holland*, 36 Ill. App. 3d 998, 1002-03, 345 N.E.2d 143, 147 (1976). In the present case, the parties began negotiating the terms of a new contract on April 28, 1993. The previous contract expired on April 30, 1993, and the parties did not sign a new agreement until July 1993. Thus, a labor dispute existed during the period from May 3 through June 19, 1993.

■ Next, plaintiff contends that no stoppage of work occurred. We disagree.

A "stoppage of work" under section 604 of the Act occurs when a company's operations are substantially curtailed. See *Travis v. Grabiec*, 52 Ill. 2d 175, 182, 287 N.E.2d 468, 472 (1972). When business operations become substantially normal again, the stoppage of work has ended. *Travis*, 52 Ill. 2d at 182, 287 N.E.2d at 471. During the time the Local and the company were negotiating the new contract, plaintiffs did not work at all. Hennessey testified that other employees would perform some of plaintiffs' work, but some of the work did not get done during this period. The company did not hire replacements. The Director viewed this evidence as showing that the company was not functioning at substantially normal levels, thus a stoppage of work existed. Once plaintiffs returned to work on June 21, 1993, operations became substantially normal again, and the work stoppage ended.

A decision is against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *Abrahamson*, 153 Ill. 2d at 88, 606 N.E.2d at 1117. If the record contains evidence supporting the administrative agency's decision, the decision should be affirmed. *Abrahamson*, 153 Ill. 2d at 88, 606 N.E.2d at 1117. The mere fact that an opposite conclusion is reasonable or that the reviewing court might have ruled differently will not justify reversal of the administrative findings. *Abrahamson*, 153 Ill. 2d at 88, 606 N.E.2d at 1117. The reviewing court may not substitute its judgment for that of the administrative agency. *Abrahamson*, 153 Ill. 2d at 88, 606 N.E.2d at 1117. Based on the record before us, we cannot conclude that the Director's finding of a work stoppage is against the manifest weight of the evidence.

■ Next, plaintiffs contend that even if a labor dispute existed and a work stoppage occurred, they were not causally related; rather, the company caused the work stoppage by its refusal to let plaintiffs work. We disagree.

Generally, a labor dispute includes a lockout as well as a strike (*Local 7—641*, 96 Ill. 2d at 98, 449 N.E.2d at 136), unless one of the statutory exceptions applies. 820 ILCS 405/604 (West 1992). In this case, no special circumstances exist that would exclude this lockout from the definition of labor dispute. Therefore, the fact that plaintiffs' unemployment resulted from a lockout does not exempt plaintiffs from statutory ineligibility under section 604 of the Act.

Furthermore, neither the unreasonableness of the demands nor the merits of the dispute are material to a determination of whether a labor dispute actually exists. *Ross*, 201 Ill. App. 3d at 478, 459 N.E.2d at 103. Section 604 of the Act evinces the legislature's desire to remain neutral in the collective-bargaining process. *Local 7—641*,

96 Ill. 2d at 98, 449 N.E.2d at 136. Therefore, whether the company's refusal to let plaintiffs work was reasonable is irrelevant. During the period from May 3 to June 19, 1993, the parties disagreed about the terms of their new contract. Because of this disagreement, the company refused to let plaintiffs work, and a work stoppage resulted. Accordingly, we conclude that the Director's finding that plaintiffs are ineligible under section 604 of the Act is not against the manifest weight of the evidence.

## III. CONCLUSION

For the reasons stated above, we reverse the circuit court's judgment and reinstate the Department's decision.

Reversed; Department decision reinstated.

COOK, P.J., and KNECHT, J., concur.