CATERPILLAR, INC., Plaintiff-Appellant, v. THE DEPARTMENT OF EMPLOYMENT SECURITY *et al.*, Defendants-Appellees.—CATERPILLAR, INC., Plaintiff-Appellant, v. THE DEPARTMENT OF EMPLOYMENT SECURITY *et al.*, Defendants-Appellees.—CATERPILLAR, INC., Plaintiff-Appellant, v. THE DEPARTMENT OF EMPLOYMENT SECURITY *et al.*, Defendants-Appellees.—CATERPILLAR, INC., Plaintiff-Appellant, v. THE DEPARTMENT OF EMPLOYMENT SECURITY *et al.*, Defendants-Appellees.—CATERPILLAR, INC., Plaintiff-Appellant, v. THE DEPART-MENT OF EMPLOYMENT SECURITY *et al.*, Defendants-Appellees.—CATERPILLAR, INC., Plaintiff-Appellant, v. THE DEPARTMENT OF EMPLOYMENT SECURITY *et al.*, Defendants-Appellees.

Third District    Nos. 3—97—1022 through 3—97—1027 cons.

Opinion filed April 22, 1999.

KOEHLER, J., dissenting.

L. Lee Smith (argued) and Alan L. Hellman, both of Westervelt, Johnson, Nicoll & Keller, of Peoria, for appellant.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and John P. Schmidt (argued), Assistant Attorney General, of counsel), for appellee Board of Review of Department of Employment Security.

Patrick T. Wallace (argued) and Stanley Eisenstein, both of Katz, Friedman, Schur & Eagle, of Chicago, for appellee Paul E. Dillefeld.

JUSTICE BRESLIN delivered the opinion of the court:

The fundamental issue on appeal is whether striking workers whose employment is terminated by their employer are ineligible for unemployment benefits pursuant to section 604 of the Unemployment Insurance Act (Act) (820 ILCS 405/100 *et seq.* (West 1996)). We find that section 604 applies to individuals on strike, but does not act to disqualify employees who are discharged for alleged misconduct while on strike. Accordingly, we affirm.

## FACTS

The defendants are six striking workers whose employment was terminated by Caterpillar, Inc. (Caterpillar), prior to the resolution of a labor dispute between Caterpillar and its employees for alleged

misconduct on the picket line. The strike began in June 1994. In anticipation of the strike, Caterpillar issued a pamphlet entitled "Rules of Conduct for Striking Employees" (rules). The rules disseminated to all employees set forth grounds for discharge based on certain conduct. It was because of alleged violation of these rules that Caterpillar later discharged the defendants.

Since they were involuntarily unemployed, the defendants filed claims for unemployment benefits with the Illinois Department of Employment Security (Department). Caterpillar responded, insisting that the defendants were ineligible to receive benefits under sections 602(A) and 604 of the Act. Pursuant to section 602(A), an individual is ineligible if he has been discharged for the deliberate and willful violation of reasonable company rules governing employee performance on the job. Section 604 disqualifies claimants unemployed due to a labor strike.

At the conclusion of hearings on the matters, a Department claims adjudicator granted each defendant's request for benefits. After unsuccessfully appealing the decisions to a Department referee and the Board of Review (Board), Caterpillar filed complaints for administrative review in the circuit court and now appeals to this court, claiming that: (1) the defendants are not eligible for benefits pursuant to section 604 of the Act because they were discharged while on strike; (2) the procedural route taken during administrative review was inappropriate; and (3) defendant Michael Steagall's determination of eligibility under section 602(A) of the Act was against the manifest weight of the evidence (3—97—1027).

## ANALYSIS

### I.

### Section 604 Eligibility

■ In general, the purpose of the Act is to alleviate the economic burden of involuntary unemployment on an employee. 820 ILCS 405/100 (West 1996). Upon filing a claim for unemployment benefits, workers are eligible for benefits once they register with the Illinois Job Service. 820 ILCS 405/500(A) (West 1996). However, the legislature has carved out several exceptions to a claimant's eligibility for benefits under the Act. Section 604 of the Act provides, in part:

> "An individual shall be ineligible for benefits for any week with respect to which it is found that his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed." 820 ILCS 405/604 (West 1996).

■ At the outset, four of the defendants claim that Caterpillar has

waived any argument regarding section 604 eligibility because the letters of appeal they received failed to raise the adjudicator's decision as to section 604 as an issue. While we acknowledge that the appeal letters did not mention a section 604 argument, we note that the issue was fully challenged and argued at every stage of the administrative proceeding. The defendants were well aware of Caterpillar's position. Thus, in the exercise of our discretion, we find the plaintiff's section 604 contentions have not been waived and are properly before this court. See *Ruane v. Amore*, 287 Ill. App. 3d 465, 677 N.E.2d 1369 (1997) (although not specifically mentioned in notice of appeal, record indicated that issue was raised below and was integral part of appeal; thus, it was not waived).

Turning now to the merits of the case, the two primary arguments presented by Caterpillar are the same issues it raised before the second district in *Caterpillar, Inc. v. Doherty*, 299 Ill. App. 3d 338, 701 N.E.2d 1163 (1998). In that case, Caterpillar appealed an identical determination by a claims adjudicator that a discharged employee who was previously on strike was eligible for unemployment benefits. The employee was discharged due to misconduct for threatening a nonstriking worker in violation of Caterpillar's rules. The court noted that the plain language of section 604 demands that an employee's unemployment be *"due to* a stoppage of work which exists because of a labor dispute." (Emphasis in original.) *Doherty*, 299 Ill. App. 3d at 343, 701 N.E.2d at 1167. Applying this language to the facts of the case, it found that the defendant was not unemployed due to the labor dispute. No longer could the unemployed claimant return to Caterpillar once the dispute was resolved. Caterpillar's actions in terminating his employment ended any such expectation. Accordingly, the court held that once an employee was discharged or terminated, he or she was no longer disqualified from receiving benefits under section 604 since the individual was no longer unemployed because of a labor dispute. *Doherty*, 299 Ill. App. 3d at 345-46, 701 N.E.2d at 1168-69.

■ We agree with the policy determinations and holdings reached in *Doherty*. In the instant case, the defendants were initially unemployed due to a labor dispute. Thereafter, they were discharged for alleged misconduct. Upon such discharge, they were no longer unemployed due to a labor dispute. They were unemployed because Caterpillar believed they had willfully violated company rules governing their behavior as employees. Because section 604 applies only to persons who are on strike and not to those who are terminated, the defendants are not barred from eligibility for unemployment benefits by section 604.

Caterpillar insists that if the Board's decision is allowed to stand,

it would operate to encourage misconduct and violence. It contends that striking employees who might otherwise be ineligible for benefits could easily circumvent the statute by engaging in misconduct that would prompt their discharge. However, this argument fails when considering the Act and its exceptions as a whole. As demonstrated by this case, employees discharged for misconduct are ineligible to receive benefits as well. Pursuant to section 602(A), if the evidence establishes that an employee has been properly discharged due to violence or other acts of misconduct, the unemployed individual is disqualified from receiving unemployment benefits. 820 ILCS 405/602(A) (West 1996).

We further disagree with Caterpillar's broad claim that ineligible workers are disqualified from receiving benefits as long as the strike continues, regardless of discharge, due to the section 604 provision "or was last employed."

In *Bridgestone/Firestone, Inc. v. Aldridge*, 179 Ill. 2d 141, 688 N.E.2d 90 (1997), a group of claimants sought unemployment benefits from Bridgestone even though Bridgestone was in the middle of a labor dispute. While on strike, the claimants had obtained interim employment from which they were later discharged. The supreme court focused on the fact that the claimants were no longer unemployed due to a labor dispute where they *were last employed*. Applying this rationale, it held that as long as the discharged claimants could prove that they procured an interim job in good faith, they should be entitled to receive unemployment benefits chargeable to Bridgestone despite the ongoing labor dispute of which they had been a part. *Bridgestone*, 179 Ill. 2d at 156, 688 N.E.2d at 97.[1] Accordingly, we find that the defendants are not disqualified from receiving benefits under section 604.

## II.

### Administrative Procedure

■ Section 800 of the Act requires:

"Whenever a 'determination' of a claims adjudicator involves a decision as to eligibility under Section 604, appeals shall be taken to the Director or his representative designated for such purpose." 820 ILCS 405/800 (West 1996).

The claims adjudicator made a partial decision of ineligibility

---

[1]The dissent suggests that our construction of section 604 renders the words "or was last employed" meaningless as there no longer exists a situation to which the phrase would apply. However, the facts of *Bridgestone* clearly demonstrate an alternative application.

under section 604. Consequently, we agree with Caterpillar's contention that the Department did not follow the proper appellate procedure. However, we find that any procedural error was harmless because section 604 does not apply to striking workers who are discharged in the middle of a strike. See *Doherty*, 299 Ill. App. 3d at 345-46, 701 N.E.2d at 1168-69.

### III.

### Defendant Steagall's Eligibility Under Section 602(A)
### (3—97—1027)

An administrative agency's factual findings are held to be *prima facie* true; therefore, we are limited to determining whether they are against the manifest weight of the evidence. *La Salle Partners, Inc. v. Illinois Property Tax Appeal Board*, 269 Ill. App. 3d 621, 646 N.E.2d 935 (1995).

■ While on strike, Steagall was discharged for striking vehicles entering and exiting a Caterpillar facility on June 20, 1995. A witness for Caterpillar testified that he saw Steagall walking in front of vehicles and shaking his fist, but he did not recall whether the plant received any complaints about Steagall's conduct or whether any vehicles were prevented from entering the plant. Steagall testified that he was present at the picket line on the day in question, but he did not strike any vehicle. Another witness corroborated his testimony. Consequently, we find that the Board's conclusion that Steagall was not engaged in misconduct is not contrary to the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

HOLDRIDGE, P.J., concurs.

JUSTICE KOEHLER, dissenting:

I believe that the majority has written out of the statute at issue a crucial clause that materially affects who is and who is not entitled to unemployment benefits. Because we are not vested with the authority to rewrite legislation, or to excise portions of existing statutory law, I respectfully dissent.

This case arises out of a labor dispute between the parties. The defendants are six striking workers whose employment was terminated by their employer, the plaintiff, prior to the strike's end. Following that termination, the defendants sought unemployment benefits.

Principally at issue is whether the defendants are eligible for unemployment benefits as a matter of law, given a provision in the applicable statute disqualifying striking workers from receiving unemployment benefits. I believe they are not.

## Underlying Facts

In June 1994, members of the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America commenced a strike against Caterpillar, Inc. (Caterpillar), at its manufacturing plant in Mossville, Illinois. That strike would last until December 1995. In anticipation of the strike, Caterpillar disseminated a letter to its employees entitled "Rules of Conduct for Striking Employees" (Rules of Conduct), wherein certain conduct on the part of any striking worker was articulated as grounds for discharge. During the course of the strike, Caterpillar discharged or indefinitely suspended six employees (the defendants) for various acts which it believed were in violation of the Rules of Conduct. The defendants thereafter initiated these proceedings.

## Legal Eligibility for Benefits Under Section 604

The Unemployment Insurance Act (Act) was enacted to provide support to unemployed Illinois workers and their families during periods of involuntary unemployment. 820 ILCS 405/100 (West 1996). See also *American Steel Foundries v. Gordon*, 404 Ill. 174, 181, 88 N.E.2d 465, 468 (1949). An unemployed person may receive benefits if: (1) he meets the eligibility requirements of section 500 of the Act (820 ILCS 405/500 (West 1996)); and (2) is not otherwise subject to any exemption specified by the Act. Illinois courts construe the Act liberally to favor awarding benefits, but establishing eligibility nevertheless remains ultimately with the claimant. *Nichols v. Department of Employment Security*, 218 Ill. App. 3d 803, 809, 578 N.E.2d 1121, 1126 (1991).

Here, the defendants meet the first requirement for benefits, as they fall within the eligibility requirements of section 500. However, they fail the second requirement, because they are indeed subject to an exemption set forth in the Act. Specifically, the defendants are disqualified under section 604 because they were involved in a labor dispute at the time they were discharged/suspended.

The principle behind section 604, which is commonly referred to as the "labor dispute disqualification," is that the state will not favor one party over another in a labor dispute by payment of compensation. *Ross v. Department of Employment Security*, 201 Ill. App. 3d 474, 477-78, 559 N.E.2d 100, 102 (1990). Section 604 evinces the legislature's desire to remain neutral in the collective bargaining process.

*Golab v. Department of Employment Security*, 281 Ill. App. 3d 108, 114, 666 N.E.2d 347, 352 (1996). Without this exception, the employer would be put in the position of subsidizing the strike by means of its compulsory contributions to the unemployment insurance fund. *Highway Drivers, Dockmen, Spotters, Rampmen, Meat Packing House & Allied Products Drivers & Helpers, Office Workers & Miscellaneous Employees Union, Local No. 710 v. Ward*, 201 Ill. App. 3d 534, 541, 559 N.E.2d 158, 163 (1990).

Section 604 provides, in pertinent part, that "[a]n individual shall be ineligible for benefits for any week with respect to which it is found that his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is *or was last* employed." (Emphasis added.) 820 ILCS 405/604 (West 1996). The crux of this case lies with what the General Assembly meant when it excluded fired workers from receiving benefits for unemployment due to a work stoppage at the place where each of those workers "was last employed."

Unfortunately, the majority's construction of the phrase renders it meaningless. As set forth in more detail below, there no longer exists a single factual scenario which could put that phrase into play.

The majority does not meet this challenge with its citation to *Bridgestone/Firestone, Inc. v. Aldridge*, 179 Ill. 2d 141, 688 N.E.2d 90 (1997), which simply harmonized two sections of the Act addressing who was a claimant's last employer. In *Bridgestone*, the claimants were workers who went on strike at their *second to last* place of employment. Those workers then obtained employment elsewhere but were terminated less than 30 days into their subsequent employment. Because benefits are charged to the last employer of more than 30 days under section 1502.1(E) of the Act (820 ILCS 405/1502.1(E) (West 1994)), the second to last employer was charged. In *Bridgestone*, the supreme court simply pointed out that section 604 does not have a similar 30-day minimum period in defining the "last employer"; thus, the claimants were not on strike at the place where they were last employed. While this created, under an unusual set of circumstances, a dichotomy concerning a claimant's "last employer," the supreme court applied the sections as they were written and allowed the dichotomy to stand.

I am not satisfied that the General Assembly's purpose in incorporating the phrase "or was last employed" was simply to create inconsistent definitions of who was a claimant's "last employer" when faced with this quirky factual scenario. *Bridgestone* is as much about section 1502.1 of the Act as it is about section 604 and does not shed light on what the phrase "or was last employed" means in the factual

context facing the court today. We would do well to heed our supreme court in *Bridgestone* when, in remarking upon basic principles of statutory construction, it observed: " ' "It is a primary rule in the interpretation and construction of statutes that the intention of the legislature should be ascertained and given effect. [Citations.] This is to be done primarily from a consideration of the legislative language itself, which affords the best means of its exposition, and if the legislative intent can be ascertained therefrom it must prevail and will be given effect without resorting to other aids for construction. [Citations.] There is no rule of construction which authorizes a court to declare that the legislature did not mean what the plain language of the statute imports." [Citation.]' " *Bridgestone/Firestone, Inc. v. Aldridge*, 179 Ill. 2d 141, 149, 688 N.E.2d 90, 94 (1997), quoting *Illinois Power Co. v. Mahin*, 72 Ill. 2d 189, 194, 381 N.E.2d 222, 224 (1978).

It is true that reviewing courts will also "give substantial weight and deference to an interpretation of an *ambiguous* statue by the agency charged with the administration and enforcement of the statute." (Emphasis added.) *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 97-98, 606 N.E.2d 1111, 1121-22 (1992). This is because, *inter alia*, "[s]uch an interpretation expresses an informed source for ascertaining the legislative intent." *Abrahamson*, 153 Ill. 2d at 98, 606 N.E.2d at 1121. It follows, however, that where an agency has interpreted a statute contrary to the plain meaning of the language used by the General Assembly, we will reverse it. The deference accorded to an agency is not so extensive as to render a reviewing court a "rubber stamp." See, *e.g.*, *Dienes v. Holland*, 64 Ill. App. 3d 109, 113-14, 380 N.E.2d 1156, 1160 (1978) (appellate court reversed the Director's interpretation of section 604 when the Director failed to give application of the ordinary meaning of the words "or was last employed").

The majority's reasoning is that section 604 is inapplicable because the defendants were no longer unemployed due to the strike once they were discharged. Rather, they were unemployed because of the discharge. However, the defendants were discharged for violation of rules promulgated as a direct result of the strike itself. But for the work stoppage, no rules would have been necessary to control the actions of the striking workers and to pursue the safety of people at the strike location. But for the work stoppage, the defendants' conduct would have violated no rules. Indeed, but for the work stoppage, there would not have been the conduct at issue, which was without exception related directly to the strike. Accordingly, any suspension or discharge for failure to abide by the rules is likewise "due to" the stoppage of work.

"[S]tatutory language itself gives the best indication of legislative intent." *Bridgestone/Firestone, Inc. v. Aldridge*, 179 Ill. 2d at 151, 688 N.E.2d at 94. Where possible, a statute will be construed so that no word, clause or sentence is rendered superfluous. *Dunaway v. Department of Labor*, 109 Ill. App. 3d 63, 68, 440 N.E.2d 231, 235 (1982), *rev'd on other grounds*, 99 Ill. 2d 417, 459 N.E.2d 1332 (1984). Section 604 disqualifies from receiving benefits a person who is unemployed due to a stoppage of work "at which he is *or was last* employed." (Emphasis added.) 820 ILCS 405/604 (West 1996). The Act distinguishes between those workers who will have jobs waiting for them when the strike concludes and those who will not; in other words, those workers who remain employed from those who were fired during the strike. The Act then includes both types of workers in the category of workers ineligible for unemployment benefits. There is simply no other factual scenario to which one could apply the phrase "or was last employed." The plain meaning of the language used by the General Assembly demonstrates an anticipation that workers fired as a result of a strike might apply for unemployment benefits during the strike and a determination that they should not be eligible for those benefits. By today's ruling, our court has vetoed that decision.

I acknowledge that the second district has analyzed facts indistinguishable from those before this court and come to the same conclusion as the majority. *Caterpillar, Inc. v. Doherty*, 299 Ill. App. 3d 338, 701 N.E.2d 1163 (1998). I simply believe that analysis to be wrong.

I agree with the majority that the administrative procedure followed was incorrect but constituted harmless error. Because I believe the defendants are not eligible for benefits, I would not address whether the facts found in defendant Steagall's case were against the manifest weight of the evidence. I would reverse the lower court's decisions on the applicability of the Act to the defendants for the reasons stated above.